[Crim. No. 15795. Second Dist., Div. Four. Dec. 22, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
HOWARD LEE LUNDY, Defendant and Appellant.

942

COUNSEL

Ferdinand F. Fernandez, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas E. Warriner, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

KINGSLEY, J.—Defendant, together with Robert S. Linnear, was charged with two counts of robbery; a prior felony conviction was alleged as against defendant. He pled not guilty but admitted the prior. After a trial by jury, he was found guilty as charged, the jury fixing the degree at first degree. A motion for a new trial was made and denied; probation was denied; he was sentenced to state prison, the sentence on the two counts to run concurrently. He has appealed from the judgment; we affirm.

After judgment was entered, and after the notice of appeal therefrom had been filed, defendant, in propria persona, filed a document entitled as a motion for a new trial and a motion to vacate the judgment. Those motions were denied by a minute order. Defendant filed a propria persona

notice of appeal from that order. We dismiss that appeal. The attempt to move for a new trial, being made after judgment, was not timely; being made after the appeal had been taken, the superior court had no jurisdiction; even if timely and within the court's jurisdiction, the order is not appealable. The motion to vacate the judgment although timely, stated nothing not raised and argued on the appeal from the judgment; no separate argument concerning it has been made here.

## I

Both counts of robbery arise out of a single episode. On April 26, 1967, at about 5 p.m., Donald Johnson saw three automobiles parked near his home. One was a black Cadillac, one was a blue and white Thunderbird, and one was a yellow Pontiac. Four Negro men alighted from the three cars, changed some of their clothing (some of them donning army-style coveralls). All four men then entered the Pontiac and drove off rapidly. Johnson took down the license numbers of the cars and reported them to the police. Later, the same men returned, changed clothing, and drove off in the Cadillac and the Thunderbird, leaving the Pontiac.

At about 5 p.m., on that same day, four Negro men riding in a yellow Pontiac, held up and robbed the office of the Hugo Neu Proler Company, taking in the process, personal property from the guard.

Eventually, defendant, Linnear and Willie Ray Davis were arrested and charged with the robbery. Davis pled guilty; defendant and Linnear were tried together. Linnear testified at length, denying knowing defendant; defendant did not testify.

On this appeal, defendant urges: (1) that the evidence was insufficient to support the verdict; (2) that evidence was introduced against him that had been unlawfully obtained; (3) that identification testimony was improperly introduced because obtained by means of an unlawful lineup; and (4) that there were errors in instructions given and refused. We reject all four contentions.

## II

As defendant's counsel points out, the evidence against this defendant is not overwhelming. Defendant's brother and sister-in-law were arrested, the day following the robbery, driving the Cadillac and part of the proceeds of the robbery and a glove identified as part of a pair worn by one robber were found in that car. A sawed-off shotgun was found in a search of the brother's home and defendant admitted that he had visited that home. Defendant was arrested, several months later, driving the

Cadillac. Defendant was identified by Miss Cobb, a secretary at Hugo Neu, as one of the robbers.

Of these items of evidence, only the eyewitness identification is of importance. The other matters have some slight value as connecting defendant with a vehicle used by the robbers, but, by themselves, clearly would not support a verdict. However, while Miss Cobb's identification was open to challenge, it was sufficient, if properly introduced and if believed by the jury, to sustain the conviction. The circumstances surrounding her identification, and its weight, were explored at length at the trial. The jury's determination, adverse to defendant, is binding on us here.

## III

■ Miss Cobb, who was the only witness to identify defendant as one of the robbers, made her first identification at a lineup. Defendant duly objected to the receipt of her in-court identification, arguing that the lineup was inherently unfair.[1] That issue was explored extensively at the trial and a photograph, admittedly accurately depicting the lineup, was before the trial court and is before us. The trial court found that the lineup was not unconstitutionally unfair, and also made an express finding that Miss Cobb's in-court identification was based on her observation at the time of the robbery and that it had not been affected by the lineup. Our own examination of the photograph discloses nothing that would justify our overriding the factual finding of the trial court.[2]

## IV

Defense counsel urges four alleged errors in the giving and receiving of instructions: (a) refusal to instruct on the weakness of eyewitness testimony; (b) failure to instruct, *sua sponte,* on specific intent; (c) failure to instruct, *sua sponte,* regarding admissions; and (d) the giving of an instruction on defendant's failure to testify.

■ (a) In *People* v. *Trotter* (1969) 273 Cal.App.2d 538, 546 [78 Cal.Rptr. 430],* we considered and rejected the argument that a trial court should instruct on the weakness of eyewitness identification. We see no reason to depart from that holding.

---

[1] The lineup was after the decision in *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]. However, defendant was adequately warned as to his constitutional rights and no argument based on *Wade* is before us.

[2] On this appeal, counsel argues that police lineups are discriminatory as to indigents, since they remain in jail, available for lineups, whereas richer defendants are out on bail. The point, even if valid, is not available here, since defendant was on bail.

*See, also, *People* v. *Snyder* (1969) 276 Cal.App.2d 520, 524 [80 Cal.Rptr. 822].

■ (b) While the trial court, in defining for the jury the elements of robbery, should have instructed on the specific intent to steal, inherent in that offense (*People* v. *Ford* (1964) 60 Cal.2d 772, 792-793 [36 Cal.Rptr. 620, 388 P.2d 892]), the error was not prejudicial. There never was any questions but that the four men who entered the Hugo Neu premises did so with the intent to commit robbery and that they, in fact and in law, did commit that offense on at least two victims. The only issue as to defendant was whether or not he was one of those four men. It is not reasonably possible that the failure completely to define the crime of robbery played any part in the jury's verdict.

■ (c) The only statement by defendant that could be called an "admission," was defendant's statement to a police officer, after his arrest, that he had visited his brother's home, "once or twice." The prosecution used this statement in an attempt to tie defendant to the sawed-off shotgun found in the brother's house. Assuming that an instruction on the unreliability of admission should, under these circumstances, have been given *sua sponte,* the omission was not prejudicial. It was in evidence that defendant, at the time of his arrest, was driving the same automobile as his brother had driven earlier. From this, and from the relationship, the jury would have assumed some familiarity by defendant with his brother's home, even if there had been no direct testimony.

■ (d) Defendant's principal attack is on the fact that the trial court gave CALJIC 51 (Re-revised), on the failure of a defendant to testify. It is asserted that the giving of that instruction was error.

The clerk's transcript does not show at whose request that instruction was given, neither the clerk nor the judge having complied with the statutory mandate that the instruction be endorsed so as to show that fact. At the request of counsel in this court, we directed the trial court to certify at whose request the instruction was given. The trial judge, at the request of defense counsel, held a special hearing, at which the judge, the trial deputy district attorney, defendant's trial counsel, and defendant, all testified. At the conclusion of that hearing, the trial judge made his certificate, as follows: "I am of the opinion that the Instruction to the jury appearing on page 39 of the clerk's transcript on appeal, that Instruction being CALJIC No. 51 (Re-revised), was requested by Richard A. Walton, attorney for the defendant Howard Lee Lunday, and designate the said Instruction as being given at the request of the defendant Howard Lee Lundy." Although counsel points out matters developed at the special hearing which could well have supported a different conclusion, we do not think

that we may override the formal finding by a trial judge, made after a full hearing devoted expressly to the issue.[3] Since it is not error to give CALJIC 51 (Re-revised) at the request of a defendant (*People* v. *Gardner* (1969) 71 Cal.2d 843, 854 [79 Cal.Rptr. 743, 457 P.2d 575]), the contention is not well founded.[4]

## V

As we have indicated above, one of the cars involved in the robbery was a black Cadillac. Johnson had taken down its license number (NFF 215) and had reported it to the police. The police had discovered that the car was registered in the name of Kenneth Holley, but Holley had told the police that the car was in the possession of Walter Lundy, defendant's brother.[5]

On April 27, 1967, at about 2 p.m. (*i.e.*, about 21 hours after the robbery), police officers saw the Cadillac double parked. A Negro man and a Negro woman were in the car, the woman being in the driver's seat. Without delay, the officers arrested the two occupants and searched them and the car. The occupants turned out to be defendant's brother, Walter Lundy, and Walter's wife, Zenia. Search of the car disclosed, in the glove compartment, two rolls of quarters, matching the description of part of the robbery proceeds, and a glove, apparently part of a pair used in the robbery. In Zenia's purse was a rent receipt.

The officers then procured a search warrant, authorizing a search of the apartment indicated by the rent receipt—which was the home of Walter and Zenia Lundy. That search disclosed a sawed off shotgun, hidden under a mattress. The gun resembled one used in the robbery. All

---

[3]Defense counsel argues that, because the trial court's finding was couched in the terms of an "opinion," it should be disregarded. But the instruction was given on the motion of someone. The record of the special hearing makes it clear that the instruction was not given *sua sponte*. It follows that it must have been requested either by defense trial counsel or by the deputy district attorney. The trial court, faced with that obvious situation, made a factual finding on evidence that supports the "opinion"; that that finding was couched in those words indicates merely that the judge was conscious of the fact that every finding on conflicting evidence is, in one sense, an "opinion" as to what happened.

[4]We note that it has not been decided by our Supreme Court that the giving of that instruction, either *sua sponte* or at the request of the People, is error. (See *People* v. *Gardner* (1969) *supra*, 71 Cal.2d 843, 853-854, fn. number 6, where the Court of Appeal decisions on that issue are collected.)

[5]Evidence at the trial was to the effect that Holley's interest was as security only, he having cosigned the papers by which the purchase of the car by Walter Lundy had been accomplished.

of the articles thus discovered were introduced at the trial as evidence against defendant.[6]

It is argued that this physical evidence was illegally procured. That contention involves three subordinate points: (1) that the arrest and search of Walter and Zenia were illegal; (2) that the search warrant, being based on the articles discovered in the original arrest and search, was the fruit of a poisoned tree; (3) that the search warrant was inherently illegal because the supporting affidavit was insufficient.[7]

■ We conclude that, apart from any original illegality in securing the information set forth in it, the affidavit was sufficient. It set forth the facts as to the involvement of the Cadillac in the robbery, its possession by Walter and Zenia, the presence in it of some proceeds of the robbery. We cannot say that the magistrate erred in concluding that there was reasonable grounds for believing that Walter and Zenia had other proceeds of the robbery or articles used in its commission, hidden at their home.

The real problem lies in defendant's contention that the information on which the warrant was based was the fruit of an illegal arrest and of a warrantless search of the car. We turn, therefore, to examine those questions.

■ Insofar as the search of the car is concerned, we see no illegality. The officers knew that that car had been one of the getaway cars involved in the robbery of the preceding day. The possibility that it might still contain either part of the loot or some of the articles used in the robbery was not so unreasonable as to render them unjustified in searching it, even without a warrant and even though not incident to a lawful arrest. (*People v. Terry* (1964) 61 Cal.2d 137 [37 Cal.Rptr. 605, 390 P.2d 381].) The roll of coins, and the glove, found in that search, were lawfully obtained,

---

[6]For reasons not given, neither Walter nor Zenia was charged with participation in the robbery.

[7]The warrant contained authority for service at night. In addition to the other objections, counsel argues that the grounds stated in the affidavit (on a mimeographed form) were insufficient. The grounds stated were as follows: "Your affiant states that his experience in investigation of robbery has shown that possession continues day and night; it is therefore important that the aforementioned personal property be seized as soon as possible, otherwise your affiant fears that it will become non-existent through transfer by remaining suspects; hence, for this reason and because of the other information received from said (informant     and from the personal observations set                                     (fellow officer
forth elsewhere in this affidavit, your affiant requests that this warrant contain a direction that it may be served at any time of the day or night, good cause appearing therefor."

The determination of good cause for a night search is primarily for the magistrate. We cannot say that, with at least three suspects still at large, he was in error in concluding that prompt action was required.

they were properly utilized as a basis for the search warrant, and they were properly admitted into evidence.

■ While it is clear that Walter and Zenia were arrested before the car was searched and, of course, before Zenia's purse was searched, the record does not disclose whether the search of the purse preceded or followed the discovery of the incriminating evidence in the car. But we need not decide either that factual question or the interesting legal problems connected therewith. The search of Zenia's purse did not result in any prejudice to this defendant of a quality requiring a reversal. There is nothing to indicate that the rent receipt—which was the sole product of the search of the purse—led, in any way, to the arrest and identification of defendant some months later. All that the rent receipt did was to tell the police the location of premises that were worth searching and to give them an address to be inserted in the warrant.[8] ■ But the search based on the warrant turned up nothing beyond the shotgun. The shotgun was never identified as having actually been used in the robbery and it was tied to defendant only by the thin circumstance that it was found in his brother's home—a home he admitted visiting at some unidentified times. Assuming that it had any relevancy at all, it added so little to the People's case that we conclude, beyond any reasonable doubt, that its admission into evidence was not prejudicial to defendant. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824].)

The appeal from the order of July 3, 1968, denying defendant's propria persona motion for a new trial and to vacate the judgment is dismissed; the judgment is affirmed.

Files, P. J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 18, 1970.

---

[8]It is, of course, quite probable that the police could have obtained Walter's address from Holley and, therefore, have known lawfully where a search might be profitable.