[Crim. No. 28817. Second Dist., Div. Four. May 23, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
TONY LEE AMOS, Defendant and Appellant.

564

**COUNSEL**

Mary E. Smiley, under appointment by the Court of Appeal, and Coleman & Smiley for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Freder-

ick R. Millar, Jr., and William R. Weisman, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

KINGSLEY, J.—Appellant was charged with robbery, "use" of a firearm and it was alleged that he had suffered three prior felony convictions. He pled not guilty, denied the priors and his section 1538.5 motion was denied. Appellant was found guilty of attempted robbery in the second degree. The allegation concerning use of a firearm was found not to be true. Appellant appeals from the judgment of conviction.

About 3:45 a.m., near Hollywood Boulevard, Martin Smith flagged down two policemen to tell them he had been robbed by a man with a gun one-half hour before. He described the robber as a male Negro with black hair, brown eyes, between 25 and 30 years of age, about 5 feet 8 inches in height, and wearing a three-quarter length brown leather jacket. The robbery had taken place on the street close to the Roxy Motel. The police went to the motel and saw a man who might be the suspect, but Mr. Smith confirmed that this was not the man who robbed him.

The man told the police that he knew about the robbery, that it was committed about 45 minutes earlier. He said the robber was a man named Tony, that Tony lived in room 48 of the Roxy Motel, and Tony had committed another robbery with a gun earlier that evening. The man said Tony knew the police were there, and Tony might attempt to use the gun on the police. The man told Officer Hall, "You'd better watch out because Tony is crazy." Smith told Officer Hall that during the robbery he heard a person call, "Tony," and in his opinion the person was yelling to the robber. In Officer Hall's opinion the victim's statement and the man's statements corroborated each other because the statements agreed as to the time of robbery, the place of the robbery, and the use of the gun.

Officer Hall and his partner went to room 48, heard some voices within, kicked in the door and arrested appellant. Appellant was taken to the police vehicle where Smith saw appellant and stated, "That is the man who robbed me."

In describing the robbery Smith said he parked across from the Roxy Motel and got out of his car. He had planned to buy a book. Appellant pointed a gun at his neck and Smith tried to memorize appellant's face. Smith pretended to be deaf and dumb, and then when people started walking on the street, Smith walked along with them. Smith walked into the motel, knocked on the door of a room and explained his situation to some occupants. When he looked down the hall he saw appellant. The occupants let Smith stay in their room and he could not call the police because the motel switchboard was closed. He hid there a half hour and then went out and found the police.

Prior to the arrest the police told the man who told them about Tony to stay with Smith by the police vehicle. The police then made the arrest and when they brought appellant to the vehicle the man already was gone. Smith said the other man "walked up the street towards Hollywood." Then Smith spontaneously exited the vehicle and identified appellant.

During the booking process at the police station Officer Hall told appellant he was going to take appellant's money and place it in evidence. Appellant then said, "I didn't get any money from that guy who was deaf and dumb." No one had previously told appellant that during the course of the crime the victim pretended to be deaf and dumb.

Appellant testified that he overheard Smith tell the police that the robber did not get any money because he played deaf and dumb. Appellant claimed that the leather jacket found in his room by the police belonged to his roommate.

### I

█ Appellant argues that there is no probable cause for arrest where the informant's reliability is not established. In the case at bar the police first learned the details of the crime and the description of the robber from the victim of the crime, Smith, and not from the anonymous informant. █ Victims of a criminal act, absent some circumstances that would cast doubt upon their information, should be considered reliable. Probable cause will not be provided by conclusionary information or anonymous informants, but neither a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in

detail to the authorities. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333].) ▮ Smith provided the police with the details of the crime, a description of defendant and also told them someone yelled the name "Tony" at the robber. This alone may have been sufficient probable cause for arrest.

However, the police also had corroborative information from an anonymous informant. When the police went to the area of the crime, the Roxy Motel, the police then interrogated a man who said Tony in room 48 had committed another crime with a gun earlier that evening. The information given by the victim, Mr. Smith, when combined with the information given by the informant, provided ample probable cause for appellant's arrest.

In *People* v. *Balassy* (1973) 30 Cal.App.3d 614, 621 [106 Cal.Rptr. 461] it was noted that an unreliable informant's statements may be corroborated by those of another, if the two informers were interviewed independently, at a different time and place. Here, the informant and the victim were interviewed separately, and the stories they had told were each corroborative of the other. Each provided information to the effect that the robber's name was "Tony" and that he had committed a robbery earlier with a gun. In the case at bar the evidence of probable cause was far stronger than in *Balassy* because here the information came from a victim and an informant and not from two anonymous informants. As we have indicated earlier the law recognizes a higher probability of credibility in the information provided by a victim than that provided by an ordinary anonymous informant.

## II

▮ Appellant argues that the officers violated Penal Code section 844 in their entry for arrest. Appellant argues that merely because the police had been informed that he had a gun without more was insufficient grounds for dispensing with the demand requirements of Penal Code section 844. (*People* v. *Bennetto* (1974) 10 Cal.3d 695, 700 [111 Cal.Rptr. 699, 517 P.2d 1163].) ▮ The announcement requirements of Penal Code section 844 are excused when there are reasonable grounds to believe that compliance would endanger the officers or frustrate arrest. (*People* v. *Dumas* (1973) 9 Cal.3d 871, 878, 879 [109 Cal.Rptr. 304, 512 P.2d 1208].) ▮ When the police made their entry in the case at bar they knew not only that the robber possessed a gun, as in *Bennetto,* but that the robber had also used a gun just 45 minutes

before to commit a robbery. They had also been informed by a man that the appellant knew the police were around and that he might use the gun on the police. The man also warned the police to "watch out" because Tony was "crazy." This was more than sufficient ground for the police to believe they would be endangering themselves by complying with the demand requirements of Penal Code section 844. The police were not required to elicit the informant's curriculum vitae to determine whether the informant's credentials were sufficiently impressive so that the police properly could accept his characterization of appellant as "crazy." ▮ Compliance with 844 is excused if police have reason to believe that a weapon will be used against them and the reasoning is based on specific facts. (*People* v. *Dumas, supra,* (1973) 9 Cal.3d at p. 878.) ▮ Here the police had every reason to believe that the appellant might shoot them if they made the statutory announcement, and their belief was supported by specific facts.

## III

▮ Appellant argues that the state's failure to give appellant the informant's name and address violates due process. The police and the district attorney are required to make a reasonable effort in good faith to locate the informer. (*Eleazar* v. *Superior Court* (1970) 1 Cal.3d 847, 852 [83 Cal.Rptr. 586, 464 P.2d 42].) However, defendant does not indicate that he made any objection or motion regarding the failure to identify the informant, and he is thereby precluded from raising the issue for the first time on appeal. (See *People* v. *Rodgers* (1976) 54 Cal.App.3d 508, 516, 517 [126 Cal.Rptr. 719].)

## IV

▮ Appellant's final contention is that admission into evidence of his statement that he did not rob the man because the man was deaf and dumb violated his rights under *Miranda* v. *Arizona* (1969) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. No objections on this ground were made at the trial level and appellant may not raise this for the first time on appeal. (*In re Dennis M.* (1969) 70 Cal.2d 444, 462 [75 Cal.Rptr. 1, 450 P.2d 296].)

▮ Further, the evidence shows that appellant volunteered his statement during the booking process and that the statement was not a product of a process of interrogation designed to elicit incriminating evidence. Where a statement was volunteered and gratuitously interject-

ed during a conversation between two police officers while a defendant was being booked under circumstances which could not be construed as an attempt to elicit information from the defendant, the statement was admissible although there was no *Miranda* warning. (*People* v. *Siegenthaler* (1972) 7 Cal.3d 465, 468, 469 [103 Cal.Rptr. 243, 499 P.2d 499].) In the case at bar appellant volunteered his statement during the booking process while no interrogation was taking place. The officer merely told defendant that he was booking the money and he asked no questions. Appellant's *Miranda* rights were not violated.

The judgment is affirmed.

Files, P. J., and Dunn, J., concurred.