[Crim. No. 3354. Fifth Dist. Nov. 21, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
LEROY ERNEST VOLLHEIM, JR., Defendant and Respondent.

COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Appellant.

DeWayne Zinkin and Richard L. Fairbank for Defendant and Respondent.

OPINION

FRANSON, Acting P. J.—The People have appealed the trial court's order dismissing criminal charges against respondent. The charges were the unlawful possession of explosives in violation of Penal Code sections 12312 and 12303.3, possession of a sawed-off shotgun in violation of Penal Code section 12020, subdivision (a) and ex-felon in possession of a concealable firearm in violation of Penal Code section 12021. The dismissal of the criminal charges resulted from the granting of a motion to suppress evidence seized as the result of an illegal police entry into a private residence. We hold that the trial court properly ordered suppression of the evidence, and the judgment of dismissal must be affirmed.

On March 2, 1977, Field Supervisor William Miller of the California Department of Justice met with officers from local and federal law enforcement agencies at Wawona Junior High School in Fresno, California, for the purpose of executing a plan to search the residence at 4548 North Arthur, where respondent was later arrested. That residence was owned by Gary Vollheim, respondent's brother. The officers had learned that the residence was equipped with closed-circuit TV monitors, burglar alarms, floodlights, a barricade, and bars on some windows. The officers had also received information from an informant Max Bizieff, a heroin addict, to the effect that Bizieff had seen a photo of respondent in possession of an automatic weapon. Bizieff also told officers that he had heard that hand grenades were in the residence. This information led officers to plan a strategy for forceful entry.

At approximately 10 p.m. on March 2, 1977, Agent Miller, the officer in charge, telephoned the number listed to the Vollheim residence. When respondent answered and identified himself, Agent Miller told Vollheim

that he was a peace officer, that he had a search warrant, and instructed respondent to come out with his hands up. Respondent then asked which door to exit. According to a prearranged plan, Officer Pat Johnson who was standing in the room where Agent Miller placed the call, gave the command to his SWAT unit to fire tear gas canisters into the residence simultaneously with the making of the telephone contact with respondent, then to forcibly enter the house. This plan was executed, despite respondent's apparent willingness to cooperate with the officer's command to exit the house.

Respondent was arrested after he exited the residence through the front door. Officers then entered the house and conducted a search which produced the weapons and explosives which were the subject of the charges against respondent.

## DISCUSSION

■ Under Penal Code section 1531 an officer may break open and enter a house to execute a search warrant if after notice of his authority and purpose, *the officer is refused admittance.* ■ It was stipulated below that the police officers failed to observe the requirements of Penal Code section 1531 in that they forcefully entered the house occupied by respondent before giving him sufficient time to comply with the command to exit the premises. Thus, the entry was illegal unless the prosecution should show that compliance was excused because of exigent circumstances and facts known to the officers at the time of entry. ■ Compliance with the statutory requirements is excused where the police have reason to believe that a weapon will be used against them if they proceed with the ordinary announcements. (*People* v. *Dumas* (1973) 9 Cal.3d 871, 878 [109 Cal.Rptr. 304, 512 P.2d 1208]; *People* v. *Amos* (1977) 70 Cal.App.3d 562, 568 [139 Cal.Rptr. 30].) However, knowledge that the defendant possesses weapons is insufficient by itself to excuse compliance. (*People* v. *Dumas, supra,* 9 Cal.3d at p. 878.) The police must believe the weapons will be used against them, and the belief must be based on specific facts. Hence, unannounced entry cannot be justified by a presumption that all owners of weapons will use them against approaching police officers. (*Id.,* at p. 879.)

In *Dumas, supra,* the police had knowledge of specific facts which made it reasonable to believe defendant would use deadly force against them; they had reliable information that Dumas habitually answered the door with a loaded firearm. In *People* v. *Henderson* (1976) 58 Cal.App.3d

349 [129 Cal.Rptr. 844], defendant's arrest record indicated a history of assaultive behavior, including a prior altercation with a police officer because of defendant's carrying of a firearm. These facts, known to the officers at time of entry, were held sufficient to bring the officers within the no knock exception set forth in *Dumas* (*id.,* at pp. 355-356). On the other hand, in *People* v. *Bennetto* (1974) 10 Cal.3d 695 [111 Cal.Rptr. 699, 517 P.2d 1163], the officers' unannounced entry was held improper where the police had information that defendant possessed a rifle but there were no specific facts suggesting that he was likely to use the weapon against them. In *Bennetto* the court observed that where the police have knowledge of the presence of a weapon in the house, absent evidence suggesting that the occupant has a propensity to use the weapon against the police, the need for compliance with the knock-notice requirements is actually stronger because there is more danger of a deadly encounter if the householder possessing a weapon is startled by an unexpected intruder. (*Id.,* at p. 701.)

 In the case at bench, the police officers had been given information concerning the condition of the North Arthur residence[1] and defendant's possession of weapons by an informant, Max Bizieff. The officers additionally knew that the house was equipped with an elaborate system of security devices. However, the police also had evidence that respondent had no dangerous propensities. Bizieff told law enforcement officers that respondent was not a violent or dangerous person. Moreover, unlike the defendant in *Henderson* the record in the present case does not indicate that respondent had a history of violent crime. The trial judge in explaining his reasons for granting respondent's motions stated:

"[W]e have almost totally [*sic*] lack of evidence of violence or propensity of the defendant. Maybe he is a violent man, but it has to be proved here in my court that there is a violent propensity, and it has to be articulated, and it has to be known to the police.

"The information given to the police shows the contrary. Mr. Bizieff, who testified here, the informant, tells us that there is no evidence of any violence on the part of the defendant. Therefore, there is no evidence that the police have that any of the firearms and weapons, explosives might be used."

---

[1]The North Arthur residence belongs to respondent's brother, Gary Vollheim; however, LeRoy came and went as he pleased and treated the residence as if it were his own.

In *Parsley* v. *Superior Court* (1973) 9 Cal.3d 934 [109 Cal.Rptr. 563, 513 P.2d 611], our Supreme Court invalidated the practice of inclusion in a warrant of advance judicial authorization for dispensing with the knock-notice requirements. It stated: "While a search warrant must necessarily rest upon previously obtained information, unannounced entry is excused only on the basis of exigent circumstances *existing at the time an officer approaches a site to make an arrest or execute a warrant.* Facts existing at the time of obtaining a warrant may no longer exist at the time of entry. Such an emergency, therefore, can be judged only in light of circumstances of which the officer is aware at the latter moment. Previously obtained information may at that time be taken into account in determining the necessity of dispensing with ordinary announcements [citations], *but a more significant factor in this decision is perception and knowledge the officer acquires on the scene immediately prior to effecting entry.*" (Italics added. 9 Cal.3d at p. 940.)

Here, the officers had developed an inflexible plan for effecting entry from which they refused to deviate, even after they reached the scene and discovered that respondent apparently was willing to exit the house and submit himself peacefully to the authorities. However, despite respondent's willingness to leave the house peacefully, the command was given to break and enter the residence. As respondent persuasively argues: "The risk of damage to property and of harm to police officers and innocent occupants is too great to permit police officers to close their eyes to the unfolding of events immediately prior to the effecting of entry, in favor of a predetermined plan of violent and forceful entry." The People having failed to show exigent circumstances as required by established case law, the trial court had no alternative but to suppress the evidence seized in the residence.

The judgment of dismissal is affirmed.

Hopper, J., and Accurso, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.