[Civ. No. 6258. Fifth Dist. June 12, 1981.]

WALTER MADISON TUTTLE et al., Petitioners, v.
THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Laurie Belger and Michael Norris for Petitioners.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Willard F. Jones and Wm. George Prahl, Deputy Attorneys General, for Real Party in Interest.

OPINION

HOPPER, Acting P. J.—Petitioners seek a writ of prohibition to prohibit further proceedings in case number 11507 in the Superior Court of the State of California in and for the County of San Luis Obispo, in which petitioners are charged with violation of Health and Safety Code sections 11358 (cultivation of marijuana) and 11359 (possession of marijuana for sale). For reasons hereinafter stated we grant the writ.

Petitioners moved to dismiss the information pursuant to Penal Code section 995. The grounds were: (1) insufficient evidence to support the commitment; (2) nighttime service of a warrant was improper; (3) the warrant was not issued on probable cause; (4) an aerial search was unlawful; and (5) the judge had failed to order disclosure of a material informant. Upon the trial court's denial of the motion to dismiss, petitioners, alleging the same grounds previously set out in the trial court, prayed for a writ of prohibition. We stayed the proceedings in the trial court and issued an order to show cause.

The facts as set forth in the affidavit for a search warrant establish the following:

The affidavit of Garry Wilson (Wilson) discloses that he has been a special agent with the California Department of Justice for the past nine years and has been assigned to the Bureau of Narcotic Enforcement throughout those nine years.

On July 7, 1980, Wilson was told by Detective Correll of the Santa Barbara sheriff's office that he (Correll) in late June 1980 had been on property belonging to one Don McCormack with McCormack's permission. Correll observed (through 7 power binoculars at a distance of 1,500 yards) "a cultivated area that was out of the ordinary." Correll later determined that the cultivated area was on property belonging to Walter Tuttle. Correll is very familiar with "fence lines" in that area and was positive he was not on property belonging to Tuttle. Correll believed that the cultivation was possibly marijuana due to the unusual nature of the site.

Wilson contacted Special Agent Al Fox (Fox) of the California Department of Justice and arranged for Fox to make an aerial surveillance of the property with Correll. Correll stated to Wilson that "he has received information from other persons that Mike Diener [Diener] has been seen carrying firearms on the property."

On July 10, 1980, Fox, Correll and a lab technician from the Santa Barbara sheriff's office flew over the "suspected property" twice at an altitude of "not lower than 1000 feet." Fox observed a garden area of approximately one-third to one-half an acre containing approximately one hundred plants, most of which were about six feet in height. Within a few hundred feet of the garden area was a reservoir containing water. There were trails leading from the reservoir to the garden area. Tents, "other structures," vehicles and people were also observed. There were trails from the tents and structures to the garden area.

Fox observed that the " . . . color, general shape and outline of the plants appeared to be marijuana and that the smaller, lighter green plants appeared to be younger marijuana plants growing among the older larger plants.

"Agent Fox further noted that the suspected plants were not consistent with any natural foliage contained in the area and that the 1/3-1/2 acre parcel did not appear consistent with any legitimate gardening operation. The garden area appeared out of place and isolated. Agent Fox related to your affiant that his observations were made without the aid of any optical devices."

Wilson was also informed by Detective Jeff Trippon of the Paso Robles Police Department that he (Trippon) had received information that Diener had a "cultivation site."

Wilson was able to determine by using county assessor aerial photographs in conjunction with photos taken on July 10, 1980, that the suspected marijuana garden was located on property owned by Walter and Catherine Tuttle.

Wilson also stated in the affidavit: "Your affiant is aware that the cultivation of marijuana takes place in the day or night hours and that based on your affiant's nine (9) years in narcotic enforcement that drug distributors often utilize the cover of darkness to conceal their transportation and handling of contraband. Your affiant is also aware that

instances of escape and carrying of firearms are becoming more common in the service of search warrants on remote cultivation sites in California. For the above reasons, your affiant requests authorization for service at any time of the day or night which would facilitate the service of the warrant early in the morning hours while residents are still sleeping."

Fox has been assigned to the Bureau of Narcotic Enforcement for 10 years and has considerable experience in the investigation of and identification of marijuana gardens.

Wilson stated in the affidavit: "Based on the observations of Agent Al Fox and his expert opinion, it is your affiant's belief that persons in control of the premises fully described on the face of this warrant are currently cultivating marijuana for the purpose of future sale."

At the preliminary hearing Wilson testified he was one of the authorities who executed the search warrant on July 18, 1980. The warrant was executed during the nighttime.

Approximately 560 marijuana plants were discovered growing in the garden area. Additionally, 48 pounds of dry marijuana were found in a tent by the garden. Papers and receipts bearing the names of Tuttle and Diener were found during the search. Irrigation and gardening equipment, weapons and vehicles were also present at the site.

Wilson testified that in his expert opinion[1] the cultivation of the marijuana was for the purpose of sale.

Diener and Ronald Enright (Enright) were at the scene when the warrant was executed. The officers were on the premises and "set up" by 5 a.m. At about that time Diener came out of a trailer, looked around and went back into the trailer. Moments later Diener again came out, carrying a double-barreled shotgun. Diener made a motion with the shotgun in the direction of two of the officers who were present to serve the warrant. The officers rolled in opposite directions and Officer Mansfield screamed "This is the Sheriff's Department, freeze." Diener continued to move the shotgun and both officers fired. Diener fell to the ground and yelled "Don't shoot."

---

[1] It was stipulated Wilson was an expert and could testify as to possession for sale.

A few moments later Enright said "I'm coming out." Officer Mansfield was not sure where Enright came from but it was from "the tent area."

A Walter Tuttle and wife are the record owners of the property in question.

## SUFFICIENCY OF AFFIDAVIT TO SUPPORT SEARCH WARRANT

■ Petitioners contend the facts set forth in the affidavit are not sufficient to support the issuance of a search warrant. Petitioners' argument is that the affidavit is insufficient because it does not explicitly state the plants observed were marijuana or that marijuana would still be present when the warrant was obtained and executed. We disagree. The affidavit disclosed that a marijuana garden of one-third to one-half acre in size was being tended in a remote area on the property in question. Aerial overflights indicated the plants appeared to be marijuana. Agent Fox, a highly experienced and well-trained narcotic agent, so testified. The affidavit was sufficient to support the issuance of a search warrant. Under all the circumstances there was reasonable grounds to believe the plants were marijuana.

## AERIAL SURVEILLANCE

■ The contention by petitioners that the aerial surveillance violated petitioners' reasonable expectation of privacy is without merit. (*People v. Joubert* (1981) 118 Cal.App.3d 637 [173 Cal.Rptr. 428]; *People v. St. Amour* (1980) 104 Cal.App.3d 886 [163 Cal.Rptr. 187].)

## NIGHTTIME SERVICE

■ Petitioners argue the showing in the affidavit was insufficient to support nighttime service of the search warrant.[2] We agree.

This court said in *People v. Watson* (1977) 75 Cal.App.3d 592, 598 [142 Cal.Rtpr. 245]: ■ "We conclude that the proper standard for 'good cause' as specified in Penal Code section 1533 is as follows: the affidavit furnished the magistrate must set forth specific facts which

---

[2]Penal Code section 1533 provides: "Upon a showing of good cause, the magistrate may, in his discretion, insert a direction in a search warrant that it may be served at any time of the day or night. In the absence of such a direction the warrant shall be served only between the hours of 7 o'clock a.m. and 10 o'clock p.m."

show a necessity for service of the warrant at night rather than between the hours of 7 a.m. and 10 p.m. This means that the magistrate must be informed of facts from which it reasonably may be concluded that the contraband to be seized will not be in the place to be searched during the hours of 7 a.m. to 10 p.m."[3]

██ The affidavit in the instant case did not furnish such specific facts. No facts were averred which reasonably could lead the magistrate to conclude that the contraband would not have still been on the premises at 7 a.m. As this court said in *People* v. *Wachter* (1976) 58 Cal.App.3d 911, 919-920 [130 Cal.Rptr. 279] with respect to a growing crop of marijuana: "It can disappear overnight only under the most exceptional circumstances. Even though it be harvested, evidence of its growth will continue to exist in the form of stubble and underground roots. It is not comparable to objects that are transitory, movable, easily hidden or consumed."

The affidavit here did not show good cause for a night search. Declarations in the affidavit that "drug distributors often utilize the cover of darkness to conceal their transportation and handling of contraband" and "instances of escape and carrying of firearms are becoming more common in the service of search warrants on remote cultivation sites in California" are too general. ██ A general propensity of drug dealers to dispose of evidence has been held insufficient to justify noncompliance with the knock/notice requirements of the Penal Code. (*People* v. *De Santiago* (1969) 71 Cal.2d 18, 28-29 [76 Cal.Rptr. 809, 453 P.2d 353] (Pen. Code, § 844); *People* v. *Gastelo* (1967) 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706] (Pen. Code, § 1531).) Magistrates do not have authority to endorse excusal of compliance with Penal Code section 1531 on a search warrant. (*Parsley* v. *Superior Court* (1973) 9 Cal.3d 934, 938-940 [109 Cal.Rptr. 563, 513 P.2d 611].) We conclude a general propensity statement in an affidavit about marijuana cultivators is likewise insufficient to justify noncompliance with Penal Code section 1533.[4]

---

[3]On the general subject of propriety of nighttime service, see Annotation (1969) 26 A.L.R. 3d 951.

[4]As noted hereinbefore, it is also stated in the affidavit that Correll told Wilson he had received information from other persons that Mike Diener "has been seen carrying firearms on the property." Without more, that statement would not be helpful to real party in light of the fact that carrying firearms may be fairly common in farm areas. Additionally, there is nothing in the affidavit indicating the person who observed Diener carrying a firearm is reliable.

We are not unaware that service of a search warrant may lead to violent confrontation between law enforcement officers and others and that officers have a right to defend themselves.[5]

The crux of this case, however, is that there are no facts within the affidavit which could reasonably allow a magistrate to infer that it was probable the contraband would be moved or the possibility of a violent confrontation lessened by nighttime service.

The affidavit here does not go beyond the nature of the contraband (marijuana) or the type of crime (cultivation) and indicate specifically why *in this case* nighttime service was needed. The assertions in the affidavit are simply too general in nature. The affidavit does not contain specific, articulable facts showing good cause for nighttime service. As the court said in *People* v. *Watson, supra,* 75 Cal.App.3d at page 597: "Because a night service of a warrant is a more serious invasion of the security of a home than a daytime service, the magistrate's exercise of discretion cannot be based solely on the nature of the contraband to be seized or the type of crime involved. Such a generalized rule would be repugnant to the Fourth Amendment requirement of particularity of reasons to justify the violation of the right to privacy."

*Watson* does not address the matter of safety of officers executing a search warrant. Safety of police officers is of extreme importance and is a factor which may be considered in determining cause for night service. However, just as *Watson* points out with respect to possible removal of contraband, allegations in an affidavit with respect to safety of officers must inform the magistrate of specific facts showing why nighttime service would lessen a possibility of violent confrontation, e.g., that the particular defendant is prepared to use deadly force against officers executing the warrant. As we stated with regard to compliance with the statutory requirements of Penal Code section 1531: "Compliance with the statutory requirements is excused where the police have reason to believe that a weapon will be used against them if they proceed with the ordinary announcements. (*People* v. *Dumas* (1973) 9 Cal.3d 871, 878 [109 Cal.Rptr. 304, 512 P.2d 1208]; *People* v. *Amos* (1977) 70 Cal.App.3d 562, 568 [139 Cal.Rptr. 30].) However, knowledge that the defendant possesses weapons is insufficient by itself

---

[5]In fact, in the instant case there was a violent confrontation. Fortunately, no one was killed.

to excuse compliance. (*People* v. *Dumas, supra*, 9 Cal.3d at p. 878.) The police must believe the weapons will be used against them, and the belief must be based on specific facts. Hence, unannounced entry cannot be justified by a presumption that all owners of weapons will use them against approaching police officers. (*Id.*, at p. 879.)" (*People* v. *Vollheim* (1978) 87 Cal.App.3d 538, 541 [150 Cal.Rptr. 837].)

In *People* v. *Dumas* (1973) 9 Cal.3d 871, 878-879 [109 Cal.Rptr. 304, 512 P.2d 1208], our Supreme Court said: "Police knowledge of the existence of a firearm excuses compliance with announcement requirements only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements. [Citations.] This belief must be based on specific facts and not on broad, unsupported presumptions. In *People* v. *Gastelo* (1967) *supra*, 67 Cal.2d 586, we held that a presumed propensity of narcotics violators to quickly dispose of contraband is not sufficient to excuse compliance with announcement requirements in every case in which entry is effected to search for narcotics. It is no more acceptable to justify unannounced entry on the basis of a presumed propensity of firearm owners to shoot at approaching police officers in every case in which the police possess information that there are firearms at the location to be entered. We observe that many suspects with no intention whatever of attacking a police officer might have understandable reasons and legal grounds for possessing firearms." (Fn. omitted.)

It is no more acceptable to justify nighttime service on the basis of a presumed propensity of firearm owners to shoot at approaching police officers than it is to justify an unannounced entry on such a basis.

■ At oral argument, upon the request of the Attorney General, the parties were given the opportunity to brief the issue of whether suppression was compelled as a remedy when good cause for night service is not shown. We have considered those briefs and conclude that suppression is constitutionally compelled when the conditions of the statute are not met.

From the general prohibition against "unreasonable searches and seizures" there is a constitutional limitation upon the time when a search warrant may be executed (see 2 LaFave, Search and Seizure (1978) § 4.7, p. 113, 116-119; *United States* ex rel. *Boyance* v. *Myers* (3d Cir. 1968) 398 F.2d 896; but see *United States* v. *Searp* (6th Cir. 1978) 586

F.2d 1117).[6] The nighttime provision of Penal Code section 1533 is a statutory condition which explicates fundamental purposes of the Fourth Amendment of the federal Constitution and article I, section 13 of the California Constitution (see also Cal. Const., art. I, § 1, on the right of privacy). Time of execution is a significant factor in determining whether or not in a constitutional sense a search is "unreasonable." By adopting Penal Code section 1533, the Legislature has clearly taken note that there is a special threat to privacy presented by nighttime police intrusions.[7]

The remedy of suppression of evidence because of noncompliance with statutory conditions of execution of search warrants is not new. That has long been the remedy after adoption of the exclusionary rule in California. (See, e.g., *People* v. *De Santiago, supra,* 71 Cal.2d 18 (Pen. Code, § 844); *People* v. *Gastelo, supra,* 67 Cal.2d 586 (Pen. Code, § 1531); *Thompson* v. *Superior Court* (1977) 70 Cal.App.3d 101 [138 Cal.Rptr. 603] (search warrant overbroad in description of place to be searched, Pen. Code, § 1529); and *People* v. *Watson, supra,* 75 Cal.App.3d 592 (night search, Pen. Code, § 1533).)

With respect to an improper nighttime search we are unaware of any California case[8] holding suppression is *not* the remedy and we are not

---

[6]*United States* v. *Searp, supra,* 586 F.2d 1117, relies on *United States* v. *Burke* (2d Cir. 1975) 517 F.2d 377. A careful reading of *Burke* shows that it deemed suppression to be an inappropriate remedy for violation of ministerial terms in the federal rule which contains restrictions analogous to Penal Code section 1533. California courts have taken a similar position. (See discussion, *infra,* fn. 9.) Federal courts do recognize that violation of provisions which protect vital privacy interests (as compared to ministerial provisions) require suppression. (*United States* v. *Burke, supra,* 517 F.2d 377, 386, fn. 13; *United States* v. *Manning* (2d Cir. 1971) 448 F.2d 992, 1001-1002 ("knock-notice" violations).)

[7]There was a strong aversion to nighttime searches at common law (see 2 LaFave, Search and Seizure, *supra,* at p. 119). "[A]fterhours searches are not favored (*Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 267, 57 CR 623, 628), [and] the exercise of this power must be especially closely scrutinized." (Krause, Cal. Search and Seizure Practice (Cont.Ed.Bar 1977) § 3.13, p. 113.)

[8]*People* v. *Glass* (1976) 56 Cal.App.3d 368, 372 [128 Cal.Rptr. 413], states that Penal Code section 1533 is *not* a constitutional requirement. The holding in *Glass* is really very narrow. *Glass* held there was nothing unreasonable or unconstitutional in the legislative determination that search warrants may be executed between the hours of 7 a.m. and 10 p.m. without a showing of good cause. *Glass* refers to *Gooding* v. *United States* (1974) 416 U.S. 430 [40 L.Ed.2d 250, 94 S.Ct. 1780], as being a case in which the United States Supreme Court treated the question of nighttime service of search warrants "solely as one of statutory interpretation." *Gooding* involved a federal statute. We do not interpret *Gooding* to be holding that statutes on the subject of nighttime service never rise to the level of a constitutional requirement under the Fourth Amendment. We conclude that Penal Code section 1533 (like Pen. Code, §§ 844 and 1531) does have a constitutional base in California.

persuaded that we should so hold. Precedent and sound public policy dictate that we maintain suppression as the remedy for a search which is violative of this statutory condition.[9]

Under all of the circumstances, we conclude there was no showing of good cause here and the magistrate abused his discretion in authorizing nighttime service. Consequently, all items seized upon the execution of the search warrant before 7 a.m. should be suppressed.

Because the items which were seized should not have been admitted into evidence, petitioners were illegally committed: The motion to dismiss should have been granted. Without the evidence which was seized, there is insufficient evidence to hold petitioners to answer.[10]

Let a writ of prohibition issue prohibiting further proceedings against petitioners or either of them in case number 11507 in the Superior Court of the State of California in and for the County of San Luis Obispo.

Zenovich, J., concurred.

ANDREEN, J.—I respectfully dissent.

Although conceding that the magistrate could not reasonably have found good cause for indorsing the search warrant for night service under Penal Code section 1533, I will attempt to show that the defect does not rise to constitutional magnitude and thus does not require issuance of the writ.

---

[9]While failure to comply with ministerial provisions of a statute may not require suppression, the substantive provisions of Penal Code section 1533 do. Penal Code section 1533 was designed to both govern the conduct of officers and to preserve the integrity of the courts. Such aims coincide with the twofold purposes of the exclusionary rule. (See *People v. Blair* (1979) 25 Cal.3d 640, 655 [159 Cal.Rptr. 818, 602 P.2d 738].) Failure to comply with the good cause requirement of Penal Code section 1533 does require suppression. (Compare *Nunes v. Superior Court* (1980) 100 Cal.App.3d 915 [161 Cal.Rptr. 351], where we held that an inadvertent failure to initial the nighttime service provision did not invalidate the service; *People v. Kirk* (1979) 99 Cal.App.3d 89, 94-95 [160 Cal.Rptr. 184], wherein the court held failure to timely file a warrant return did not invalidate the search.)

[10]Petitioners' argument concerning disclosure of an informant need not be addressed in view of our holding concerning the nighttime service issue.

California law holds that the requirement of "good cause" for night-time service of a search warrant "is essentially a statutory requirement imposed by the Legislature and not a constitutional requirement." (*People v. Glass* (1976) 56 Cal.App.3d 368, 372 [128 Cal.Rptr. 413].)

In a relatively recent case, *Gooding v. United States* (1974) 416 U.S. 430 [40 L.Ed.2d 250, 94 S.Ct. 1780], the United States Supreme Court construed 21 United States Code section 879(a), which reads: "A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time." The construction given by the high court to that statute was that probable cause for the warrant itself is all that is necessary for a nighttime search, and that no special showing is required for a night-time search other than a showing that the contraband is likely to be on the property. (416 U.S. 430, 454-458 [40 L.Ed.2d 430, 266-269, 94 S.Ct. 1780, 1793-1794].) One would think if the matter were one of constitutional magnitude, a different result would have occurred.

A recent treatise on search and seizure law relies extensively upon the dissent in *Gooding* and comes to the conclusion that the time of searching an *occupied family home* is a significant factor in determining whether a search is reasonable for Fourth Amendment purposes. (2 LaFave, Search and Seizure (1978) § 4.7, pp. 116-119.)

LaFave also relies upon *United States* ex rel. *Boyance v. Myers* (3d Cir. 1968) 398 F.2d 896. In *Boyance*, a 2:30 a.m. search was made of an occupied family home pursuant to a search warrant which was limited to "search in the daytime." The court held the nighttime search constitutionally invalid.

According to LaFave only 23 states restrict searches to daytime hours absent a special showing and authorization. (2 LaFave, *supra*, § 4.7, p. 116.) The federal courts require special justification in the Federal Rules of Criminal Procedure, rule 41(c), but this rule does not apply to cases involving controlled substances. (*Gooding v. United States, supra,* 416 U.S. 430.)

Even more persuasive is the fact that in many jurisdictions, the only showing needed to justify nighttime search is that the affiant is "positive" that the property is at the place to be searched. (See generally, 68

Am.Jur.2d, Searches and Seizures, § 110, p. 764; 79 C.J.S., Searches and Seizures, § 83(c)(2), p. 900; 2 LaFave, *supra*, § 4.7, p. 116.) And as indicated above, no special showing is necessary for nighttime searches for controlled substances under federal law.

In California, time for service has been set at the will of the Legislature. Before 1970, Penal Code section 1533 authorized service "in the daytime." In 1970, the statute was amended to allow service at any time between the hours of 7 a.m. and 10 p.m.

In a thoughtful and clear decision, the court in *United States v. Searp* (6th Cir. 1978) 586 F.2d 1117 had before it a search beginning shortly before midnight at the home of the mother of a suspected bank robber. Rule 41(c)(1), Federal Rules of Criminal Procedure, provided that search warrants "shall be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorized its execution at times other than daytime." (*Id.*, at p. 1119.) The rule was not satisfied, yet the evidence was not suppressed in the trial court, and the circuit court of appeals affirmed. The court reasoned that the application of the exclusionary rule was not warranted. It held that requiring suppression in all cases would be a remedy out of all proportion to the benefits gained. (*Id.*, at p. 1123.) The court stated at page 1125: "When there has merely been a violation of the procedural rules governing night searches, suppression, with its attendant potential for a miscarriage of justice, is not justified when there was neither a possibility of bad faith conduct on the part of the police, nor prejudice to the defendant (in the sense that the search might not have occurred or would not have been so abusive if the requirements of the Rule had been observed). The test is met, and suppression would be required when, based on the facts and circumstances known to the police at the time application was made for the warrant, there is a reasonable possibility that permission for a night search would have been refused even if an appropriate request had been made."

*Searp* cites other circuits which do not invoke the draconian remedy of suppression for every violation of a statutory rule governing the issuance and execution of search warrants. (*Id.*, at p. 1125.)

In the instant case, the officers were concerned with their safety and decided that a nighttime search would reduce the chance of someone being injured. We should recognize their expertise in this area. Conced-

edly their affidavit for a nighttime search is deficient in light of *People v. Watson* (1977) 75 Cal.App.3d 592 [142 Cal.Rptr. 245]. But there is no showing of bad faith on their part. They took their affidavit to a magistrate who, in the exercise of his discretion, found that the allegations were sufficient. (See *People v. Lundy* (1969) 2 Cal.App.3d 939, 947, fn. 7 [82 Cal.Rptr. 815]: "The determination of good cause for a night search is primarily for the magistrate.") Further, a daytime search, although thought by the officers to be more dangerous than one conducted at night, would have netted the same evidence. Therefore, a violation of the procedure for nighttime searches did not prejudice the petitioners in the sense that more incriminating evidence was obtained.

*United States v. Burke* (2d Cir. 1975) 517 F.2d 377, 386-387, a case relied on in *Searp*, held: "[V]iolations of Rule 41 alone should not lead to exclusion unless (1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule." (Fns. omitted.)

Neither of the alternative prongs of the *Burke* test are present here. Petitioners certainly were not prejudiced in the sense that the search would not have occurred had it taken place in the daytime. Neither is it apparent that the search would not have been so abrasive had it occurred in the daylight hours. In fact, if the officers had been compelled to approach what amounted to an isolated garrison in the daytime, there quite possibly could have been more injuries than those sustained when the search was conducted in the early morning hours.

Finally, there is no evidence of any intentional or deliberate disregard of the statute involved.

The actions of the police in this case did not constitute an "ignoble shortcut to conviction."[1] They did not reduce the rights under the Fourth Amendment to an empty promise. The mistake herein is a violation of a legislative enactment which, although salubrious, does not lie at the amendment's heart.

It is also of significance that the place searched was a rural encampment. Although tents were there for the use of the guards/cultivators,

---

[1] *Mapp v. Ohio* (1961) 367 U.S. 643, 660 [6 L.Ed.2d 1081, 1093, 81 S.Ct. 1684, 1694, 84 A.R.R.2d 933].

the place was more akin to a commercial enterprise than a home. (Several cases have stressed the "home" factor in discussing nighttime searches. See *United States* ex rel. *Boyance* v. *Myers, supra,* 398 F.2d 896—"occupied family home"; *Monroe* v. *Pape* (1961) 365 U.S. 167, 210 [5 L.Ed.2d 492, 517-518 81 S.Ct. 473] (conc. opn. of Harlan, J.)—"dwelling house" and "occupied private home" (*Monroe* concerned itself with a warrantless search).)

I recognize that this court decided *People* v. *Watson, supra,* 75 Cal.App.3d 592, wherein we reversed a trial court's denial of a suppression motion because good cause was not established for the authorization of a night search provision in the search warrant. The case is distinguishable on two grounds: The place to be searched was a private home and the question of whether a violation of Penal Code section 1533 automatically required suppression was not discussed by the court.

The remedy invoked by the majority is drastic and unnecessary. The use of the exclusionary rule to remedy statutory violations requires an exercise of discretion, not a Pavlovian response. The rule should not be applied where the statutory violation does not reflect on the integrity of the courts or otherwise implement the purposes of the Fourth Amendment.

I would deny the writ.

The petition of real party in interest for a hearing by the Supreme Court was denied August 19, 1981. Richardson, J., was of the opinion that the petition should be granted.