[Crim. No. 17234. In Bank. Jan. 22, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD GUY BENNETTO, Defendant and Appellant.

## COUNSEL

Richard Guy Bennetto, in pro. per., Harvey E. Goldfine, under appointment by the Court of Appeal, and David B. Rosenthal, under appointment by the Supreme Court, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Robert R. Granucci and Jerome C. Utz, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McCOMB, J.**—Defendant was convicted of manufacturing, and possessing for sale, a restricted dangerous drug, in violation of former sections 11911 and 11912 (now §§ 11378-11379) of the Health and Safety Code. His principal contention on appeal is that the trial court erred in ruling at a pretrial suppression hearing (Pen. Code, § 1538.5) that the entry of police officers into his apartment did not violate section 844 of the Penal Code and that certain evidence seized in the apartment was therefore admissible against him. On the facts of this case, defendant's contention must be sustained and the judgment reversed.

*Facts:* On the evening of June 20, 1969, Dean Huddlestun was arrested by San Francisco police officers. During the course of interrogation, he disclosed that defendant, against whom there was an arrest warrant outstanding, maintained apartments in San Mateo at 2 Clark Drive and 1221 South El Camino. He also informed the police officers that defendant possessed a rifle.

A group of San Francisco and San Mateo police officers then went to 2 Clark Drive. The manager of the apartment building identified a photograph of defendant as the person who had rented an apartment there the previous day. The manager gave the police a passkey; and, after knocking and announcing themselves, the police entered the apartment. After ascertaining that defendant was not in the apartment, the police conducted a thorough search of the premises, including cabinets and drawers; but they failed to uncover any incriminating evidence. The police had no search warrant.

The police then went to the El Camino address several miles away. There, the landlady identified a photograph of defendant as the person who had rented an apartment on June 6, 1969, and she gave the police a passkey. After listening outside the apartment for about 10 seconds and hearing nothing, the police entered the apartment without either knocking or announcing themselves. No lights were on, and defendant was not present on the premises. As they walked through the apartment, the police discovered in plain sight various incriminating items (including a quantity of amphetamines and utensils for its manufacture). Additionally, as a result of exploratory searching of some closed trunks and the refrigerator, the police discovered several items which had not been in plain sight. The police had no search warrant for the El Camino premises, either.

Later the same evening, after receiving information that a cab driver had taken someone answering defendant's description to the Clark Drive address, the police returned to that address. Immediately upon arriving, the police unsuccessfully pursued on foot someone answering defendant's description. The police then again obtained a passkey and, after knocking and announcing themselves, again entered the apartment. Defendant was not in the apartment, but the police discovered a rifle wrapped in a paper bag beneath a bed. It had not been there when they had searched the apartment earlier that evening.

The police returned to the El Camino address and, using the passkey which the landlady had previously given them, entered defendant's apartment. They did not knock or announce themselves before entering. They then photographed, and took possession of, the various items which they

had observed in plain view during their first entry. In addition, they conducted a thorough search of the apartment and seized other items which had not been in plain view. At defendant's trial, only those items which had been in plain view in the El Camino apartment were admitted into evidence against him.[1]

Question: *Did the trial court properly admit in evidence any of the items seized in defendant's El Camino apartment?*

*No.* ■ Although contraband falling in the plain vew of an officer who has a right to be in a position to have that view is ordinarily subject to seizure and may be introduced into evidence (*Harris* v. *United States,* 390 U.S. 234, 236 [19 L.Ed.2d 1067, 1069, 88 S.Ct. 992]; *People* v. *Block,* 6 Cal.3d 239, 243 [103 Cal.Rptr. 281, 499 P.2d 961]), forcible entry into a dwelling in violation of section 844 of the Penal Code renders inadmissible any evidence discovered therein. (*Parsley* v. *Superior Court,* 9 Cal.3d 934, 938 [109 Cal.Rptr. 563, 513 P.2d 611]; *Greven* v. *Superior Court,* 71 Cal.2d 287, 290 [1] [78 Cal.Rptr. 504, 455 P.2d 432].)

■ A nonconsensual entry by means of a passkey is a "breaking" or forcible entry within the meaning of section 844 of the Penal Code. (*People* v. *Stephens,* 249 Cal.App.2d 113 [57 Cal.Rptr. 66]; see also *Sabbath* v. *United States,* 391 U.S. 585, 590 [20 L.Ed.2d 828, 833-834, 88 S.Ct. 1755].) That section provides that a police officer may break and enter a dwelling in order to effect an arrest if the person to be arrested is within the dwelling, or there are "reasonable grounds for believing him to be." In *Horack* v. *Superior Court,* 3 Cal.3d 720 [91 Cal.Rptr. 569, 478 P.2d 1], this court held that an unannounced forcible entry was impermissible under section 844 of the Penal Code, on the ground, among others, that the police officers had no reasonable cause to believe that there were, in fact, persons inside at the time of their entry.[2] (See also *People* v. *Marshall,* 69 Cal.2d 51, 56 [69 Cal.Rptr. 585, 442 P.2d 665]; *Greven* v. *Superior Court, supra,* 71 Cal.2d 287, 293, fn. 9.)

In the present case, the police testified that Huddlestun had told them that defendant *resided* at the two addresses which he furnished them.[3] The

[1]Defendant was not apprehended and arrested until July 6, 1969, approximately three weeks after the evening on which his apartments were entered and searched.

[2]In *Horack,* the police officers did not have an arrest warrant; and they were not searching for the owners of the dwelling, but, rather, were investigating a report by a neighbor that suspicious strangers had entered the house.

[3]At the preliminary hearing, the police testified that Huddlestun furnished them the Clark Drive address. It seems reasonable to infer that he also furnished the El Camino address, and in his briefs defendant assumes this to be so.

landlady at the El Camino apartment informed the police only that defendant had rented the apartment two weeks before the night of the entry. She had not seen defendant or anyone else enter or leave the apartment since then. Moreover, there was no evidence that the police made any personal observations which indicated that the dwelling was occupied. Indeed, there were no lights coming from the apartment, and the police heard no sounds during the short time they listened outside the apartment before entering.

■ Section 844 of the Penal Code requires more than a reasonable belief that the person to be arrested owns or leases the dwelling which is entered; there must be a reasonable belief that the person is inside at the time of entry. (*Horack* v. *Superior Court, supra,* 3 Cal.3d 720, 726 (3); *Vaillancourt* v. *Superior Court,* 273 Cal.App.2d 791, 797 [2] [78 Cal.Rptr. 615].) Accordingly, if the only information available to the police was that defendant resided at the El Camino apartment, one of the prerequisites to a permissible forcible entry under section 844 of the Penal Code was lacking. As a result, the entry was illegal, and any evidence seized pursuant to such entry is inadmissible.

■ Even if it could be found that the police officers had a reasonable belief that defendant was inside the El Camino apartment, however, it would appear that the entry was nevertheless illegal because of a failure to comply with the announcement requirements of section 844 of the Penal Code. Section 844 provides that before making a forcible entry to effect an arrest, a police officer must first demand admittance and explain the purpose for which admittance is desired. Here, the police admittedly entered the El Camino apartment without knocking or announcing themselves.

■ It is settled that noncompliance with the announcement requirements of section 844 of the Penal Code is excusable where there are reasonable grounds to believe that compliance would endanger the arresting officers. (*Parsley* v. *Superior Court, supra,* 9 Cal.3d 934, 938; *People* v. *Dumas,* 9 Cal.3d 871, 878 (4) [109 Cal.Rptr. 304, 512 P.2d 1208].) Before their entry into defendant's apartment, the police had been told by Huddlestun that defendant "had a sawed-off carbine rifle." Additionally, one of the police officers in the search party, Officer Christianson, reportedly informed the others that at some time in the past he had arrested defendant and that defendant had a gun on his person at the time of such arrest. Officer Christianson did not testify at the preliminary hearing.

In *Remers* v. *Superior Court,* 2 Cal.3d 659, 666 (4) [87 Cal.Rptr. 202, 470 P.2d 11], this court reasoned that in justifying an arrest "the People must prove that the source of the information is something other than the

imagination of an officer who does not become a witness." This principle, moreover, has been applied by at least one court in the context of an entry in violation of section 844 of the Penal Code. (*People* v. *Adkins,* 273 Cal.App.2d 196, 197-199 [78 Cal.Rptr. 397]; see also *People* v. *Madden,* 2 Cal.3d 1017, 1021 [88 Cal.Rptr. 171, 471 P.2d 971].) Furthermore, defendant's case is not one involving "official police channels" as the source of the information relied upon. (*People* v. *Madden, supra,* 2 Cal.3d 1017, 1021; *Remers* v. *Superior Court, supra,* 2 Cal.3d 659, 666-667.) Officer Christianson's alleged statement that he had arrested defendant carrying a gun, it should be noted, was not substantiated at the preliminary hearing and is apparently not borne out by defendant's arrest record.[4]

In any event, the information relied upon by the police established nothing more than that at some time in the past defendant had possessed a gun and that he presently possessed a rifle. In *People* v. *Dumas, supra,* 9 Cal.3d 871, we held that information as to the possession of firearms is insufficient by itself to justify noncompliance with section 1531 of the Penal Code.[5] We there said, at pages 878-879: "In the present case the information provided by the confidential informant that defendant possessed several firearms is insufficient by itself to excuse compliance with section 1531. We have recognized that one of the primary purposes of section 1531 . . . is to prevent possible violent responses that might be aroused in a startled and fearful householder suddenly confronted with unknown persons breaking into his home for unannounced reasons. [Citation.] The danger that such a confrontation will result in serious injury or death to the occupant, police officers, or innocent bystanders is obviously intensified when the householder is in possession of a firearm. *Thus, where the police are aware of such a weapon, the case for requiring them to give notice of their authority and purpose becomes more rather than less compelling.*

"Police knowledge of the existence of a firearm excuses compliance with announcement requirements only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements. [Citations.] *This belief must be based on specific facts and*

---

[4]The actions of the police officers themselves cast doubt on the bona fides of their claim that the reason they failed to comply with the announcement requirement was that they feared armed resistance. The police testified that before the unannounced entry into the El Camino apartment they had made an announced entry at the Clark Drive apartment, in full compliance with section 844 of the Penal Code. But at the time of both entries they possessed identical information relating to defendant, and they offered no explanation as to why compliance was safe during the first entry but not during the second.

[5]Section 1531 of the Penal Code provides for the forcible entry of a dwelling for the purpose of executing a search warrant. The scope of the notice and announcement requirements of section 1531 is coextensive with the requirements of section 844.

*not on broad, unsupported presumptions."* (Italics added.) ■ This reasoning is equally applicable in the context of section 844 of the Penal Code.

■ In the present case, the police officers had no information whatsoever other than that defendant possessed a rifle. Unlike the situation in Dumas, there was no information that defendant habitually answered the door armed with a firearm (9 Cal.3d at p. 879); and there were no personal observations or "specific facts" which indicated that an announced entry might be perilous.

The judgment is reversed.

Wright, C. J., Tobriner, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.