PEOPLE v VASQUEZ (AFTER REMAND)

Docket No. 111275. Decided October 26, 1999. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and remanded the case to the circuit court for further proceedings.

Jeremy S. Vasquez was charged in the Saginaw Circuit Court with possession of marijuana with intent to deliver. The court, Leopold P. Borrello, J., granted the defendant's motion to suppress evidence found in a police raid on a home pursuant to a search warrant on the ground that the police violated the knock-and-announce statute, MCL 780.656; MSA 28.1259(6). The Court of Appeals, WAHLS, P.J., and CAVANAGH and J. F. KOWALSKI, JJ., affirmed in an unpublished opinion per curiam (Docket No. 176917). The Supreme Court remanded the case to the Court of Appeals for reconsideration in light of *Richards v Wisconsin*, 520 US 385 (1997). On remand, the Court of Appeals, WAHLS, P.J., and D. E. HOLBROOK JR., and CAVANAGH, JJ., again affirmed in an opinion per curiam. 227 Mich App 108 (1997) (Docket No. 204506). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice WEAVER, and Justices TAYLOR, CORRIGAN, YOUNG, and MARKMAN, the Supreme Court *held*:

The police were acting under and within the scope of a valid search warrant. It is not necessary to determine whether knock-and-announce principles were violated. As in *People v Stevens*, 460 Mich 626 (1999), suppression of the evidence is not an appropriate remedy.

Reversed and remanded.

Justice KELLY, joined by Justice CAVANAGH, dissenting, stated that the violation of the knock-and-announce statute in this case constituted an unreasonable search under the Fourth Amendment. No facts were advanced that justified the failure to comply with the statute. Accordingly, the exclusionary rule applies, and the evidence should have been excluded as fruit of the poisonous tree under *Wong Sun v United States*, 371 US 471 (1963).

*Stevens*, holding that the inevitable discovery exception to the exclusionary rule applies to violations of the knock-and-announce reasonableness provisions of the Fourth Amendment, was wrongly

decided. The decision in that case flies in the face of binding precedent from the United States Supreme Court. Moreover, it ignores the constitutional consequences of that ruling.

The Fourth Amendment protects citizens from unreasonable searches and seizures. The federal protections have been extended to state proceedings through the Due Process Clause of the Fourteenth Amendment. Under the circumstances of this case, art 1, § 11 of the Michigan Constitution must be construed as providing the same protections as its federal counterpart. The United States Supreme Court has held that the common-law knock-and-announce requirement is incorporated into the Fourth Amendment. In the absence of circumstances justifying noncompliance with the knock-and-announce mandate, a violation of the mandate gives rise to the exclusionary rule. The introduction into evidence of materials seized and observations made during an unlawful search is prohibited by the exclusionary rule. The rule also prohibits the introduction of materials and testimony that are the products or indirect results of an illegal search, the so-called "fruits of the poisonous tree."

The Fourth Amendment must be applied under a standard of reasonableness. The purpose of excluding evidence seized in violation of the constitution is to substantially deter future violations of the constitution. The holding in *Stevens* that the inevitable discovery exception excuses compliance with the constitutional requirement that officers knock and announce their presence before executing a search warrant forecloses any possibility of conducting a reasonableness inquiry to determine whether the Fourth Amendment was violated, and, ultimately, whether the exclusionary rule applies.

*Stevens* also erroneously held that the exclusionary rule does not apply to violations of Michigan's knock-and-announce statute, MCL 780.656; MSA 28.1259(6). Since the knock-and-announce concept is an element of the reasonableness prong of the Fourth Amendment, the exclusionary rule should apply when the failure to knock and announce results in an unreasonable search.

The state bears a heavy burden when attempting to demonstrate an urgent need that justifies an exception to traditional Fourth Amendment requirements. It has fallen short of its burden in this case. The United States Supreme Court has unanimously rejected a blanket exception to the knock-and-announce requirement protection afforded by the Fourth Amendment.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Michael D. Thomas*, Pros-

ecuting Attorney, and *J. Thomas Horiszny*, Assistant Prosecuting Attorney, for the people.

*James E. Tiderington* for defendant.

AFTER REMAND

PER CURIAM. This is a drug prosecution in which the circuit court suppressed the principal evidence on the ground that the police violated the so-called "knock and announce" statute. The Court of Appeals affirmed, but we reverse the judgment of the Court of Appeals, and remand this case to the circuit court for further proceedings.

I

On an evening in March 1994, officers of the Saginaw Police Department executed a search warrant at a home in the city. The warrant authorized the police to search for marijuana, drug-related paraphernalia, and various other material. Neither the warrant nor the supporting affidavit mentioned weapons at the home.[1]

At a subsequent hearing on the defendant's motion to suppress, the first officer into the home testified that, at a briefing just before the warrant was executed, the officers were told that "one of the subjects was known to carry a shotgun either on his person or close by him the majority of the time." This statement

---

[1] The affidavit contained a reference to weapons, but that statement related to the *absence* of weapons on the person of a confidential informant.

concerned a person who reportedly lived at the house.

The officer also explained the normal procedure for executing a search warrant:

> Usually, as we enter, proceed quietly up, we knock, announce "Police, search warrant," and then gain entry.

That approach was not followed in the present case, however. The officer gave this account:

> *Q.* Okay. And what did you do on this particular date at this location?
>
> *A.* This particular case, the house is set back from the roadway and sidewalk, further back than other houses along the street. As we're approaching, I'm about—I would say, approximately 12 to 15 feet away from the front porch. A party looks out the front window, which was located to the right side of the front door, and sees myself and [another officer] as we're approaching, looks, and then I see a movement to the rear of the house once they see us.
>
> *Q.* Okay. What did you do then?
>
> *A.* Yell "Police, search warrant." The screen door was already open, and I kicked the door in and made entry.
>
> *Q.* Okay. Anything else about your actions at that time that you can add to . . .
>
> *A.* Well, as I kicked the door open and went in, I could see personnel moving to the rear of the house. I'm yelling "Down, police, search warrant."
>
> At the same time, there's one party that's trying to get out the side door, which is located on the south side of the house.
>
> *Q.* How many individuals were located inside then?
>
> *A.* Thirteen people, very small house.

When the court asked, "Officer, how much time elapsed from the time that you announced your presence as police officers and that you had a search war-

rant to the time that the door went down?" the officer responded, "Less than a second."[2]

Approximately ten officers were involved in the raid. The officer who testified at the hearing never said they were in uniform, but he twice told the circuit court that a person looking out the window could identify them as police officers.

On cross-examination, the officer confirmed that the only information he had about the presence of a weapon was the statement that had been made during the briefing. Asked on recross-examination whether there were any guns found in the house, the officer responded, "I have no idea. Our normal procedure is to secure the residence, the personnel involved, we cuff everyone with a few exceptions, and then we turn it over to Vice, and it's their investigation from there."[3]

As a result of evidence found during the search, the defendant was charged with possession of marijuana with intent to deliver. MCL 333.7401(2)(c); MSA 14.15(7401)(2)(c), as amended by 1989 PA 143.[4]

At the conclusion of the hearing on the defendant's motion to suppress, the circuit court ruled that there were "insufficient exigent circumstances to justify a

---

[2] The only other witness at the suppression hearing was the defendant's mother. She said that she never heard anyone say anything until the door was kicked open and the police entered the house.

[3] The fact that a shotgun may not have been found is of no consequence. All that matters is what the officers had reason to believe at the time of their entry. *United States v Ramirez*, 523 US 65, 71, n 2; 118 S Ct 992; 140 L Ed 2d 191 (1998).

[4] The current language is found in MCL 333.7401(2)(d); MSA 14.15(7401)(2)(d), as amended by 1998 PA 319.

violation of the knock-and-announce statute."[5] Citing *People v Polidori*, 190 Mich App 673; 476 NW2d 482 (1991), and *People v Asher*, 203 Mich App 621; 513 NW2d 144 (1994), the circuit court concluded that this violation should lead to suppression of the evidence obtained in the raid.

The prosecutor appealed in the Court of Appeals, which affirmed.[6] The prosecutor then applied to this Court for leave to appeal, and we remanded the case to the Court of Appeals for reconsideration in light of *Richards v Wisconsin*, 520 US 385; 117 S Ct 1416; 137 L Ed 2d 615 (1997). 454 Mich 922 (1997).

On remand, the Court of Appeals again affirmed. 227 Mich App 108; 575 NW2d 294 (1997). In a central passage of its opinion, the Court wrote:

> The facts of this case do not leave us with a definite and firm conviction that knocking and announcing would have increased the danger to the police. Although the police officers had been advised that one of the individuals thought to live at the house was known to carry a shotgun, there was no evidence suggesting that this individual was likely to use the weapon against the police or that he had

---

[5] Though popularly called the "knock and announce" statute, this measure actually does not require the police to "knock." Rather, they must give notice of their authority and purpose.

The officer to whom a warrant is directed, or any person assisting him, may break any outer or inner door or window of a house or building, or anything therein, in order to execute the warrant, if, after notice of his authority and purpose, he is refused admittance, or when necessary to liberate himself or any person assisting him in execution of the warrant. [MCL 780.656; MSA 28.1259(6).]

[6] The Court of Appeals initially denied the prosecutor's application for leave to appeal, but granted the application on rehearing and then affirmed. Orders of the Court of Appeals dated August 8 and September 9, 1994, and unpublished opinion per curiam, issued March 11, 1997 (Docket No. 176917).

violent or assaultive propensities. See *State v Piller*, 129 Ariz 93, 96; 628 P2d 976, 979 (Ariz App, 1981); *People v Bennetto*, 10 Cal 3d 695, 701; 111 Cal Rptr 699; 517 P2d 1163 (1974). Clearly, the fact that an occupant of a residence owns or carries a gun cannot eliminate the knock-and-announce requirement in all cases. [227 Mich App 110-111.]

The prosecutor has applied to this Court for leave to appeal.

II

In light of our recent decision in *People v Stevens*, 460 Mich 626; 597 NW2d 53 (1999), we need not decide whether the police violated the constitutional and statutory knock-and-announce requirement under the circumstances of this case. Even if such a violation occurred, suppression of the evidence is not the appropriate remedy.

Discussing the nature and basis of the suppression rule in this context, we cautioned in *Stevens* that the U.S. Supreme Court has made it "quite clear . . . that there has to be a causal relationship between the violation and the seizing of the evidence to warrant the sanction of suppression." 460 Mich 639. We also observed that "[t]he exclusionary rule is not meant to put the prosecution in a worse position than if the police officers' improper conduct had not occurred, but, rather, it is to prevent the prosecutor from being in a better position because of that conduct." 460 Mich 640-641.

For these and other reasons, including the absence of a legislative intent to apply the exclusionary rule to evidence seized in violation of the statute, 460 Mich 645, this Court found the remedy of suppression unavailable. A key element of the analysis, in both the

constitutional and statutory contexts, was the inevitability of discovery. The "knock and announce" principles do not control the execution of a valid search warrant—they only delay entry for a brief period. 460 Mich 642, 645-646.

Bringing these considerations together, this Court concluded:

> In the present case, the police were acting under a valid search warrant and within the scope of that warrant. Even though the method of entry into the dwelling violated the knock-and-announce principles, the evidence inevitably would have been discovered. There are both state and federal sanctions for such violations that serve as deterrents for police misconduct that are less severe than the exclusion of the evidence. Additionally, exclusion of the evidence will put the prosecution in a worse position than if the police misconduct had not occurred. Therefore, we hold that the trial court erred in granting the defendant's motion to suppress the evidence because of the violation of the Fourth Amendment. Additionally, we fail to discern any legislative intent to have the exclusionary rule apply to violations of the "knock and announce" statute. [460 Mich 647.]

In the present case, we need not determine whether knock-and-announce principles were violated. In all other respects, the above statement is as applicable to the present case as it was in *Stevens*. As in *Stevens*, suppression of the evidence is not the appropriate remedy in this case, even if there was a violation of the knock-and-announce requirement.

For these reasons, we reverse the judgment of the Court of Appeals, and remand this case to the trial court for further proceedings. MCR 7.302(F)(1).

WEAVER, C.J., and TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred.

KELLY, J. (*dissenting*). In this case, the police violated the defendant's Fourth Amendment rights. US Const, Am IV. Their decision to forgo the steps of knocking and announcing their presence was not reasonable. Yet, the majority holds that the exclusionary rule does not apply, relying on *People v Stevens*, 460 Mich 626; 597 NW2d 53 (1999).

I dissent because *Stevens* was wrongly decided. It held that the inevitable discovery exception to the exclusionary rule applies to violations of the "knock and announce" reasonableness provisions of the Fourth Amendment. I opined in *Stevens*, and I continue to believe, that the majority's decision in that case flies in the face of binding precedent from the United States Supreme Court. Moreover, the *Stevens* holding ignores the constitutional consequences of ruling that the exclusionary rule does not apply to violations of the knock-and-announce statute. MCL 780.656; MSA 28.1259(6). Therefore, in this case, because I am bound to follow the precedent of the United States Supreme Court, I would affirm the decision of the Court of Appeals.

I

I offer the following analysis of the issues involved here.

The introduction into evidence of materials seized and observations made during an unlawful search is prohibited by the exclusionary rule. *Weeks v United States*, 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914), overruled on other grounds in *Elkins v United States*, 364 US 206; 80 S Ct 1437; 4 L Ed 2d 1669 (1960); *Silverman v United States*, 365 US 505; 81 S Ct 679; 5

L Ed 2d 734 (1961). The rule also prohibits the introduction of materials and testimony that are the products or indirect results of an illegal search, the so-called "fruits of the poisonous tree." *Wong Sun v United States*, 371 US 471, 488; 83 S Ct 407; 9 L Ed 2d 441 (1963).

The exclusionary rule originated in three decisions of the United States Supreme Court at the turn of the twentieth century: *Weeks v United States, supra, Adams v New York*, 192 US 585; 24 S Ct 372; 48 L Ed 575 (1904), and *Boyd v United States*, 116 US 616; 6 S Ct 524; 29 L Ed 746 (1886). The United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV.]

Therefore, the Fourth Amendment protects citizens from unreasonable searches and seizures. *Terry v Ohio*, 392 US 1, 9; 88 S Ct 1868; 20 L Ed 2d 889 (1968); *People v Faucett*, 442 Mich 153, 157-158; 499 NW2d 764 (1993).

The federal constitutional protections against unreasonable searches and seizures have been extended to state proceedings through the Due Process Clause of the Fourteenth Amendment. See *Mapp v Ohio*, 367 US 643, 655; 81 S Ct 1684; 6 L Ed 2d 1081 (1961); *People v Nash*, 418 Mich 196, 211; 341 NW2d 439 (1983); *People v Burrell*, 417 Mich 439, 448, n 15; 339 NW2d 403 (1983). Under the circumstances of this case, art 1, § 11 of the Michigan Con-

stitution must be construed as providing the same protections as its federal counterpart. See *People v Toohey*, 438 Mich 265, 270-271; 475 NW2d 16 (1991), and *People v Collins*, 438 Mich 8, 25; 475 NW2d 684 (1991).[1]

In *Richards v Wisconsin*,[2] the United States Supreme Court reiterated its earlier holding that the common-law knock-and-announce requirement is incorporated into the Fourth Amendment. *Id.* at 385, citing *Wilson v Arkansas*, 514 US 927, 934; 115 S Ct 1914; 131 L Ed 2d 976 (1995):

> Given the longstanding common-law endorsement of the practice of announcement, we have little doubt that the Framers of the Fourth Amendment thought that the method of an officer's entry into a dwelling was among the factors to be considered in assessing the reasonableness of a search or seizure.

Accordingly, in the absence of circumstances justifying noncompliance with the knock-and-announce mandate, a violation of the mandate gives rise to the exclusionary rule. *Richards v Wisconsin, supra;*[3] *Wil-*

---

[1] Const 1963, art 1, § 11  provides:

The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state.

[2] 520 US 385; 117 S Ct 1416; 137 L Ed 2d 615 (1997).

[3] The exclusionary rule applies when the principles of knock and announce are violated, unless the police establish the reasonableness of noncompliance. They must show that evidence might have been

*son v Arkansas, supra; Miller v United States,* 357
US 301; 78 S Ct 1190; 2 L Ed 2d 1332 (1958).

Thus, the Fourth Amendment must be applied
under a standard of reasonableness. *Ker v California,*
374 US 23; 83 S Ct 1623; 10 L Ed 2d 726 (1963). "[I]n
some circumstances an officer's unannounced entry
into a home [notwithstanding a valid search warrant]
might be unreasonable under the Fourth Amend-
ment." *Wilson, supra* at 934. "The purpose of exclud-
ing evidence seized in violation of the Constitution is
to substantially deter future violations of the Consti-
tution." *Colorado v Connelly,* 479 US 157, 166; 107 S
Ct 515; 93 L Ed 2d 473 (1986).

The Michigan Supreme Court majority in *Stevens*
held that the inevitable discovery exception excuses
compliance with the constitutional requirement that
officers knock and announce their presence before
executing a search warrant. This holding forecloses
any possibility of conducting a reasonableness inquiry
to determine whether the Fourth Amendment was
violated, and ultimately, whether the exclusionary
rule applies.

Since the majority's holding is clearly inconsistent
with the United States Supreme Court precedent of
*Richards* and *Wilson,* I cannot follow it.

II

The Supreme Court majority in *Stevens* also errone-
ously held that the exclusionary rule does not apply
to violations of Michigan's knock-and-announce stat-

---

destroyed, lives endangered, or that compliance would have been a use-
less gesture. *Id.* at 393-394.

ute. The Michigan Legislature codified the knock-and-announce concept in MCL 780.656; MSA 28.1259(6):

> The officer to whom a warrant is directed, or any person assisting him, may break any outer or inner door or window of a house or building, or anything therein, in order to execute the warrant, if after notice of his authority and purpose, he is refused admittance, or when necessary to liberate himself or any person assisting him in execution of the warrant.

Since the knock-and-announce concept is an element of the reasonableness prong of the Fourth Amendment, the exclusionary rule should apply when the failure to knock and announce results in an unreasonable search. See *Ker v California*, *supra* at 32; see also *People v Polidori*, 190 Mich App 673; 476 NW2d 482 (1991).[4]

The United States Supreme Court has not directly addressed the appropriate remedy for violations of the knock-and-announce rule in the context of the execution of a valid search warrant. However, various federal circuit courts and state courts have treated it.

---

[4]  [W]hen the method of entry violates the knock-and-announce statute, the exclusionary rule may come into play if the Fourth Amendment standard of reasonableness is also offended. Because the primary purpose of the constitutional guarantee is to prevent unreasonable invasions, if a police officer has reasonable cause to enter a dwelling to make an arrest, his entry and search are not unreasonable. If the police officers have a basis to conclude that evidence will be destroyed or lives will be endangered by delay, strict compliance with the statute may be excused. Similarly, if events indicate that compliance with the statutory requirements would be a useless gesture, the requirement that the police officers wait for admission may also be excused. [*Id.* at 677 (citations omitted).]

For example, in *United States v Marts*,[5] the Eighth Circuit rejected the government's good-faith defense, under *United States v Leon*, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984). It held that the only appropriate remedy in that case was exclusion of the evidence:

> The *Leon* decision does not extend to the instant case, where there is no indication that the officers' conduct was objectively reasonable. Rather, there was a clear violation of the knock-and-announce rule, without the presence of exigent circumstances. The Fourth Amendment limitations are designed to deter precisely this kind of conduct. The incentive for officers to operate within those limitations in the future is provided by our application of the exclusionary rule. [*Id.* at 1219.]

Similarly, in *United States v Bates*,[6] our Sixth Circuit held that, unless exigent circumstances exist, the failure of state law enforcement officials to knock and announce their presence will render evidence seized inadmissible.[7]

---

[5] 986 F2d 1216 (CA 8, 1993). This case, like many federal cases, analyzed police officers' actions within the context of 18 USC 3109, rather than the Fourth Amendment. The Supreme Court resolved any apparent conflict between the "knock and announce" requirement in § 3109 and that of the Fourth Amendment in *United States v Ramirez*, 523 US 65; 118 S Ct 992; 140 L Ed 2d 191 (1998). It held that § 3109 was merely a codification of the common law, and that the decisions in *Wilson*, 514 US 927, and *Richards*, 520 US 385, serve as guideposts for analysis under either provision. Likewise, MCL 780.656; MSA 28.1259(6) is a codification of the common law.

[6] 84 F3d 790, 795 (CA 6, 1996).

[7] See also *United States v Moore*, 91 F3d 96 (CA 10, 1996) (affirming the district court's suppression of the evidence where the police violated the knock-and-announce rule); *United States v Becker*, 23 F3d 1537 (CA 9, 1994) (holding that evidence obtained during execution of a search warrant should be suppressed because of the officers' failure to knock and announce where no exigent circumstances were present); *United States v Knapp*, 1 F3d 1026, 1030 (CA 10, 1993), citing *United States v Ruminer*,

The United States Supreme Court has applied the exclusionary rule to suppress evidence obtained following an unlawful arrest. It predicated the exclusion on arresting officers' failure to comply with the knock-and-announce rule. In *Miller v United States*, *supra*, the Court explained that, although it was mindful of society's reliance on law enforcement agencies to achieve law and order,

> insistence on observance by law officers of traditional fair procedural requirements is, from the long point of view, best calculated to contribute to that end. However much in a particular case insistence upon such rules may appear as a technicality that inures to the benefit of a guilty person, the history of the criminal law proves that tolerance of shortcut methods in law enforcement impairs its enduring effectiveness. The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. . . . Every householder, the good and the bad, the guilty and the innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house. [*Id.* at 313.]

Even though the exclusionary rule applies to Fourth Amendment violations, the states also have the authority, when necessary, to exclude evidence when statutory requirements have not been observed. *Mallory v United States*, 354 US 449; 77 S Ct 1356; 1 L Ed 2d 1479 (1957); *Navarro v United States*, 400 F2d 315 (CA 5, 1968). In formulating Michigan's knock-and-announce statute, the Legislature included a nominal penalty, MCL 780.657; MSA 28.1259(7). The law

---

786 F2d 381, 383 (CA 10, 1986) (holding that "[e]vidence seized must be suppressed as the fruit of an unlawful search" if the officers failed to comply with the knock-and-announce statute).

made it a misdemeanor for anyone to exceed his authority or exercise it with unnecessary severity in the course of executing a warrant. It did not, however, provide for suppression of the evidence when officers fail to knock and announce their presence.

However, our analysis cannot stop there. We are not free to turn a blind eye to constitutional violations. Considering the determinations in *Marts, Leon, Ramirez, Mallory, Miller, Ker, Moore, Bates, Wilson,* and *Richards,* the exclusionary rule provides another significant remedy when the knock-and-announce statute is violated. See *Ker, supra, People v Polidori, supra,* and *People v Asher,* 203 Mich App 621, 624, n 1; 513 NW2d 144 (1994).

I find it unfortunate that the majority in *Stevens* chose to ignore the mandates of our United States Supreme Court, and I cannot, in good faith, follow *Stevens'* divergent path.

Being that the majority refuses to discuss whether knock-and-announce principles were violated here, I offer the following analysis of the issue presented:

The police maintained that exigent circumstances existed to justify noncompliance with the knock-and-announce statute. However, only two facts were presented to support the officers' decision. An occupant of the house was known to carry a weapon, and an occupant may have seen that police were approaching the house to raid it. These reasons are not sufficient to justify the actions of the officers.

A suspicion that an occupant of a house is known to carry a weapon should certainly heighten officers' concern for their safety, but it does not constitute an exigent circumstance. No evidence in this case indicates that the person had a history of violence. Here,

as in *Stevens*, the majority's decision jeopardizes the sanctity of a person's home, as well as a person's freedom from unannounced searches.

Have we reached the point where anyone, for example a former police officer possessing a concealed weapon permit, can be subjected to an unannounced police raid in his home? Heretofore, ownership, possession, or a license to carry a weapon has not been enough to create an exigent circumstance unless coupled with a demonstrated propensity for violence involving weapons.

The approach taken by the federal courts in this type of case is illustrated by *United States v Bates*.[8] There, the sixth circuit squarely addressed whether known firearms constitute an exigency for purposes of the knock-and-announce rule. The court explained:

> The presence of a weapon creates an exigent circumstance, *provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent. Evidence that firearms are within a residence, by itself, is not sufficient to create an exigency to officers when executing a warrant.* However, threats to an officer's safety, a criminal record reflecting violent tendencies, or a verified reputation of a suspect's violent nature can be enough to provide law enforcement officers with justification to forego the necessity of knocking and announcing their presence.[9]

The court concluded:

> In the instant case, we find nothing in the record indicating anyone inside the Apartment was dangerously armed and prone to violence. While the officers had been informed

---

[8] *Supra* at 794.
[9] *Id.* at 795 (emphasis added; citations omitted).

by Boddie there was a handgun inside the Apartment, Boddie never told the officers that the Defendants were violent and likely to use a weapon if confronted by law enforcement personnel. In addition, there is no evidence showing the Defendants had a criminal history of violence or a reputation indicating they were likely to be violent. None of the Defendants had a criminal record for violent crimes and none of the Defendants had threatened violence against any law enforcement official who attempted to interfere with their drug selling business. Thus, there was no reasonable basis for the Narcotics Unit to claim they were faced with a situation where their safety was placed in jeopardy due to the presence of a handgun in the apartment.[10]

Similarly, the facts of the instant case furnish no evidence that someone in the dwelling was "dangerously armed and prone to violence."[11] The officers were told only that one of the possible occupants was known to carry a shotgun. This information is insufficient to create an exigency justifying a no-knock entry.[12]

---

[10] *Id.* at 796.

[11] *Id.*

[12] Several jurisdictions have continued to adhere to this rationale when applying the *Richards* decision. An example is found in *Kornegay v Cottingham*, 120 F3d 392, 398 (CA 3, 1997). There, the fact that a shooting occurred and the murder weapon was not recovered did not establish that the suspect was in possession of it. The court held that " 'officers must have more than a mere hunch or suspicion before an exigency can excuse the necessity for knocking and announcing their presence . . . .' " No exigency was found in *United States v Dupras*, 980 F Supp 344, 347-348 (D Mont, 1997). There, the application for a search warrant consisted mostly of generalities regarding the habits of drug manufacturers and distributors. One previous violent criminal act was alleged in the application, a conviction based on a domestic dispute. In *State v Russell*, 1998 WL 357546 (Ohio App, 1998), the presence of a weapon alone was found generally insufficient to justify an officer's fear for his safety. The officer must have facts establishing that the suspect was armed and likely to use a weapon or become violent. In *Wynn v State*, 117 Md App 133, 163; 699 A2d 512 (1997), the court held that a reasonable belief that firearms may

The second justification for the no-knock entry in this case is that the occupants had "effective notice" of the police presence before the police entered the house. In *Richards*, there was a clear factual finding by the magistrate that the defendant opened the door, observed a police officer, and then quickly shut the door. In the present case, an officer testified that he saw somebody peering through the window at the police as they approached the house. This is not enough to create exigent circumstances.[13] Again, unlike *Richards*, here there was no finding by the trial court that the destruction of the items sought in the search warrant was threatened.[14]

The warrant was executed at 7:28 P.M. Officer Brooks, a member of the Emergency Services Team, testified that the officers "were silhouetted. It was dark out but streets [sic] lights were silhouetted in back of us, more or less spotlighting our movement." The officer opined that anyone at that distance would have clearly identified the officers as police officers.

In *Richards*, the occupant of the hotel room looked directly at the uniformed police officer from a distance of approximately two feet through a partially opened door. Clearly he saw the officer. However, in this case, the officers, presumably not dressed in highly visible uniforms, approached the house in the

---

have been within the residence, standing alone, is clearly insufficient to justify excusing the knock-and-announce requirement.

[13] See *United States v Beck*, 662 F2d 527, 530 (CA 8, 1981). In that case, the fact that an officer saw a face in the window that disappeared from sight was an "essentially neutral" observation and did not constitute exigent circumstances.

[14] See *United States v Hidalgo*, 747 F Supp 818, 831 (D Mass, 1990), where drugs were not immediately accessible to any occupant of the apartment and were not easily destroyable; thus, there was no exigency.

evening, illuminated from behind by streetlights. It is unexplained how Officer Brooks knew that the occupant who peered through the window identified the figures as police, when the streetlights silhouetted, but did not illuminate, them.

The state bears a heavy burden when attempting to demonstrate an urgent need that justifies an exception to traditional Fourth Amendment requirements.[15] It has fallen short of its burden in this case. The circumstances present here are those in a great many cases involving a narcotics raid. The United States Supreme Court has unanimously rejected a blanket exception to the knock-and-announce requirement protection afforded by the Fourth Amendment.

On the basis of the foregoing, I would hold that the violation of the knock-and-announce statute constituted an unreasonable search under the Fourth Amendment. No facts were advanced that justified noncompliance with the statute. Accordingly, I would affirm the Court of Appeals ruling and hold that the exclusionary rule applies and that the evidence should have been excluded as fruit of the poisonous tree. See *Wong Sun v United States, supra.*

CAVANAGH, J., concurred with KELLY, J.

---

[15] *Welsh v Wisconsin,* 466 US 740, 749-750; 104 S Ct 2091; 80 L Ed 2d 732 (1984).