774 A.2d 1183

**Kai Ruchell LEE,**

v.

**STATE of Maryland.**

**No. 914, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

June 27, 2001.

Geraldine K. Sweeney, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, and Joseph

I. Cassily, State's Attorney for Harford County, Bel Air, on the brief), for appellee.

Argued before SALMON, SONNER and JOHN F. McAULIFFE (retired, specially assigned) JJ.

## ON MOTION FOR RECONSIDERATION

SONNER, Judge.

Kai Ruchell Lee appeals his conviction for possession with the intent to distribute a controlled dangerous substance, and alleges, as a basis for reversal, that the warranted search of his home by police without knocking and announcing violated his constitutional guarantee to be free from unreasonable searches and seizures. Lee principally relies upon *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), the case in which the United States Supreme Court held that the "knock and announce" provision of the common law is a part of the Fourth Amendment's reasonableness requirement. The Supreme Court there ruled that the failure to knock and announce, without justification, before entering with a valid warrant, is unreasonable and requires the application of the exclusionary rule to the evidence seized. We agree *Richards* is applicable here, and reverse the Circuit Court for Harford County and rule that the court should have suppressed the evidence seized from Lee's home.

### Background

Early on a weekday morning late in September 1998, a large combined task force of law enforcement officers from the Baltimore County Police Department, the Harford County Sheriff's Office, the Harford County Police Department, and the Maryland State Police, assembled in front of a single-family, colonial-style home in a residential area of Harford County. The task force, which arrived in several cars and trucks, surrounded the home, while eight Harford County deputy sheriffs, wearing black hoods and fatigue-style uniforms, battered down the door of Lee's home with a two-handled "ram," which is essentially a pipe filled with concrete.

Once inside, the task force "secured the premises" by dispersing throughout the house. Task force officers handcuffed two adults found upstairs in the master bedroom, gathered three small children from other bedrooms, and then herded all five members of the household together in the downstairs family room. The task force leader, a Maryland State Police trooper, and the Harford County deputy sheriffs then summonsed the remaining task force officers to enter and search the entire house.

One of the task force officers discovered in the top drawer of an upstairs bedroom chest twenty-six grams, less than an ounce, of what later proved to be cocaine. When questioned by one of the officers, Lee admitted that the cocaine was his. The officers arrested and charged Lee with possession with the intent to distribute a controlled dangerous substance.

The task force assembled that September morning resulted from narcotics officers of the Baltimore County Police Department obtaining a search warrant from a judge of the District Court of Maryland in Baltimore County to search a home in neighboring Harford County, after an informant engaged in two controlled purchases of cocaine from Lee. Armed with the search warrant, the Baltimore County Police sought assistance from the Harford County Police, requesting the organization of the multi-unit task force to carry out the early morning raid on Lee's home.

Other than the Baltimore County officers, no member of the task force previously participated in the investigation of Lee. The task force leader learned from the Baltimore County officers only that they had a warrant from a District Court judge in Baltimore County, that they had observed Lee at the address, and that the Baltimore County officers believed Lee kept narcotics in his home. The task force leader testified that his decision on the manner of entry, that is, using a battering ram without warning, was influenced by the advice of an assistant state's attorney in Harford County. The assistant state's attorney told the task force leader that he

need never knock and announce when he has a belief that doing so would lead to the destruction of narcotics.

It is clear that at no time did the task force, even momentarily, consider knocking and announcing before battering down the door of Lee's home. Moreover, it does not appear that the Baltimore County officers ever considered requesting permission from the issuing District Court judge to enter without warning.[1] The only certain information known to the task force leader about the individual suspect and the specified premises was that Lee lived there and it was very likely he was home that morning because his car was parked in front of the residence.

Prior to trial, Lee moved to suppress the fruits of the search by alleging that the failure of the police to knock and announce or, alternatively, to demonstrate that the police had a reasonable suspicion to believe exigent circumstances justified their failure to do so, rendered the search and seizure unconstitutional. Lee argued that the application of the exclusionary rule to direct physical evidence unreasonably seized required suppression. *See Ott v. State,* 325 Md. 206, 225, 600 A.2d 111 (1992). After admitting evidence and hearing argument, the circuit court ruled orally that the police bypassed knocking and announcing, not because they feared for their safety, but, instead, based upon the testimony of the experienced task force leader, because there was a possibility someone inside the home might destroy evidence in a case alleging possession of cocaine. The task force leader testified that the

---

1. Some states allow a court to issue no-knock warrants, but there is no such provision in Maryland law. There is some authority from other jurisdictions that, without such an express provision, a court has no ability to grant permission in advance to enter without knocking. *See Richards,* 520 U.S. at 396 n. 7, 117 S.Ct. 1416. We do not address this issue in the case *sub judice.* Nothing in this opinion, however, should be read to discourage law enforcement officers from seeking no-knock warrants when exigent circumstances justify such action. Evidence that a no-knock warrant was, or was not, sought by law enforcement officers could be a material factor for the trial judge to consider in determining whether there was a reasonable suspicion that exigent circumstances truly existed and consequently justified a no-knock entry.

only conditions that would prompt him to knock and announce would be knowledge that nobody was home, or that the quantity of cocaine inside was so large as to make it impossible to destroy it quickly.[2]

### Discussion

When we review a denial of a motion to suppress under Maryland Rule 4–252, we examine only the record of the suppression hearing and not that of the trial. *Wynn v. State,* 117 Md.App. 133, 165, 699 A.2d 512 (1997), *rev'd on other grounds,* 351 Md. 307, 718 A.2d 588 (1998). This Court will accept the facts as determined by the hearing judge, unless those facts are clearly erroneous. *Id.* "But, as to the ultimate, conclusionary fact of whether a search was valid, we must make our own independent constitutional appraisal by reviewing the law and applying it to the facts of the case." *Id.* We begin our analysis by reaffirming a fundamental principle of constitutional review that states: "The preservation of the rights guaranteed by the Constitution is of greater moment than the detection of any crime or the punishment of any single offender." *Glodowski v. State,* 196 Wis. 265, 220 N.W. 227, 229 (1928).

The United States Supreme Court stated long ago, in *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), the basis for the knock and announce requirement and held that the trial court should have suppressed the seized narcotics evidence. Writing for the majority, Justice Brennan explained:

> The requirement of prior notice of authority and purpose before forcing entry into a home is deeply rooted in our heritage and should not be given grudging application. . . . Every householder, the good and the bad, the guilty and the

---

**2.** Although the affidavit to support the search warrant was eventually admitted into evidence during Lee's trial, it was not introduced during the suppression hearing. It is unclear what, if any, evidence the District Court judge in Baltimore County reviewed to conclude that Lee was keeping narcotics in his home. Lee argued unsuccessfully that there was insufficient support for a search of his residence, but did not allege that as a basis for his appeal.

innocent, is entitled to the protection designed to secure the common interest against unlawful invasion of the house. *Miller,* 357 U.S. at 313, 78 S.Ct. 1190.

Ten years later, in the case of *Sabbath v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), the Supreme Court again overturned the conviction of a drug dealer after federal officers failed to knock and announce their presence before entering an unlocked apartment and seizing cocaine and drug packaging materials. In doing so, the Court did not clearly rely upon the United States Constitution, but, instead, applied 18 U.S.C. § 3109, the federal statute that mandated the common law knock and announce requirement.

Finally, in 1995, the Supreme Court clarified the Fourth Amendment basis for the knock and announce requirement. In *Wilson v. Arkansas,* 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), a unanimous opinion authored by Justice Thomas, the Court vacated a state conviction because the police had failed to knock and announce before entering the defendant's home. The Arkansas Supreme Court had affirmed the conviction and framed the issue for the Supreme Court, by holding that the knock-and-announce principle was not constitutionally required. The United States Supreme Court disagreed and ruled unambiguously that knocking and announcing was indeed required because it was so deeply embedded in Anglo American law, and the original framers of the Fourth Amendment must have included the no-knock component. *Wilson,* 514 U.S. at 934, 115 S.Ct. 1914. The Supreme Court recounted the history of the rule, traced the origins of the requirement to at least *Semayne's Case,* 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 195 (K.B.1603), and concluded that the principle became part of the fabric of colonial law. *Wilson,* 514 U.S. at 931–933, 115 S.Ct. 1914. Because of the "longstanding common-law endorsement of the practice of announcement," the Court held that the method of entry into a dwelling was a factor in determining the reasonableness, and therefore the constitutionality, of searches and seizures.[3] *Id.* at 934, 115 S.Ct. 1914.

---

**3.** *See also* G. Robert Blakey, The Rule of Announcement and Unlawful Entry: *Miller v. United States and Ker v. California,* 112 U. PA. L.REV. 499 (1964).

The *Wilson* Court did not, however, go so far as to condemn all unannounced entries into a home as *per se* unreasonable. The Court said that "[t]he Fourth Amendment's flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interests." *Id.* at 934, 115 S.Ct. 1914. The Court declined to proclaim a "comprehensive catalog of the relevant countervailing factors," opting to allow the lower courts to define appropriately when not knocking and announcing would be reasonable. *Id.* at 936, 115 S.Ct. 1914. Then, instead of reversing the conviction outright, the Court remanded the case to the Arkansas Supreme Court and instructed it to determine whether the particular facts of the case, including the defendant's alleged threatening of a government informant with an automatic weapon, as well as a co-tenant's prior convictions for arson and firebombing, and the suggestion that the narcotics evidence could be easily destroyed, relieved the police from having to knock and announce. The question that remained after *Wilson* was whether a search for easily destroyed evidence, such as narcotics, was, without more, justification for a no-knock entry.

The answer came two years later, in *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), when the Supreme Court, again in a unanimous decision, this time authored by Justice Stevens, applied the Fourth Amendment's reasonableness requirement to a no-knock search that resulted in the seizure of drugs. The Supreme Court reviewed a state judicial rule predating the decision in *Wilson*, which stated that police need never knock and announce their presence in executing a warrant in the course of a felony drug investigation. *Richards*, 520 U.S. at 389, 117 S.Ct. 1416. The Court noted that the Wisconsin Supreme Court assumed that "all felony drug crimes will involve 'an extremely high risk of serious if not deadly injury to the police as well as the potential for the disposal of drugs by the occupants prior to entry by the police.' " *Id.* at 390, 117 S.Ct. 1416. The Wisconsin rule had been that felony drug cases *always* pres-

ent exigent circumstances that relieve the police from knocking and announcing, because of the "convergence in a violent and dangerous form of commerce of weapons and the destruction of drugs." *Id.* at 392, 117 S.Ct. 1416. In other words, the Wisconsin Court had held that all felony drug searches conducted without knocking and announcing were *per se* reasonable.

The Supreme Court, in rejecting that rationale, stated that the characterization was an over generalization that was too far removed from required judicial review, and, moreover, failed to strike a proper balance between individual privacy interests and the needs of law enforcement. *Id.* at 393, 117 S.Ct. 1416. The Court further pointed out that such a broad exception for drugs would, with little difficulty, extend to other categories of crimes and make the "knock-and-announce element of the Fourth Amendment's reasonableness requirement ... meaningless." *Id.* at 394, 117 S.Ct. 1416. The Court then held that each case must be subject to judicial review of the facts and circumstances that the police encounter in executing the search warrant. *Id.* The Supreme Court, nevertheless, affirmed the Supreme Court of Wisconsin, but, in doing so, specifically disapproved of the blanket exception in drug cases. The Court approved only the Wisconsin court's concurring opinion, which held that the no-knock entry in that case was supported by evidence of exigent circumstances. *Id.* at 395–396, 117 S.Ct. 1416.

As a result of *Wilson* and *Richards,* judges and law enforcement officials have been given some guidance as to when a no-knock entry may comply with the Fourth Amendment's reasonableness requirement. The *Wilson* Court declined to set out any specifics, but did state, by way of dicta, that entry without knocking and announcing was justified when it would be a " 'senseless ceremony' ... in pursuit of a recently escaped arrestee," or in cases when the police "have reason to believe that evidence would likely be destroyed." *Wilson,* 514 U.S. at 936, 115 S.Ct. 1914. *Richards* then went further and approved of no-knock entries when lives are in danger or when an "effective investigation of the crime" would be

thwarted through destruction of the evidence or escape of the suspects. *Richards,* 520 U.S. at 394, 117 S.Ct. 1416.

Turning our attention to Maryland case law, we find that since *Richards* this Court has had only one occasion to review a no-knock entry and seizure. In *Wynn v. State,* 117 Md.App. 133, 699 A.2d 512 (1997), *rev'd on other grounds,* 351 Md. 307, 718 A.2d 588 (1998), this Court reviewed the history of the no-knock requirement and its exceptions in Maryland. Judge Thieme, writing for the Court, noted that as early as 1964 the Court of Appeals had concluded a defendant was entitled to raise the failure to knock and announce in executing a search warrant, and quoted Judge Hammond, in *Henson v. State,* 236 Md. 518, 204 A.2d 516 (1964), as follows:

> The claim that the evidence seized was inadmissible because the police officers executing the search warrant did not advise those within that they had such a warrant and demand admittance, but broke in forcibly without notice, is an extension of the old rule that a peace officer seeking to arrest an individual who is in a house, either by authority of an arrest warrant or under circumstances making a warrant unnecessary, must give proper notice of his purpose and authority and be denied admittance before he can use force to break and enter ...

*Wynn,* 117 Md.App. at 160, 699 A.2d 512 (quoting *Henson,* 236 Md. at 521–522, 204 A.2d 516). This Court's case-by-case analysis explained that Maryland law developed so as to require police to "announce and demand," but the law excuses the failure to do so when circumstances exist, such as officer peril, possible destruction of evidence, or the officer's purpose is evident or known. *Wynn,* 117 Md.App. at 161, 699 A.2d 512.

In affirming Wynn's three convictions for daytime housebreaking and three convictions for theft of property, we upheld the lower court's finding that there were sufficient particularized facts known to the police who executed the warrant to believe that their personal safety justified not announcing and demanding entrance. *Id.* at 168, 699 A.2d

512. In other words, we held that the exigent circumstances justified a no-knock entry.

 It is clear that, although Maryland law and the opinions of the Supreme Court of the United States presumptively require knocking and announcing before entry when searching with a proper warrant, the law also forgives the failure to do so when there are legally sufficient exigent circumstances. It is equally clear that there is no blanket or *per se* exception for drug searches. Rather, in each case, the police must articulate a reasonable suspicion, based upon particularized facts, that exigent circumstances exist which justify not knocking and announcing.[4]

Here, the record fails to show anything more than that Lee was a drug dealer whom the police observed on two previous occasions selling a small amount of a controlled dangerous substance in neighboring Baltimore County. Two days after the District Court judge in Baltimore County issued a search warrant based upon the two observed sales, the task force assembled with no investigation to supplement what the officers had included in the application for the warrant. No one, in either Baltimore County or Harford County, conducted a further investigation through any of the traditional means regularly employed by narcotics officers, such as examining records, surveillance, eavesdropping, additional buys, or undercover contacts. It appears that the Baltimore County investigators, after observing the two sales and obtaining the warrant, simply sought to close the case by passing the matter off to Harford County law enforcement, who then assembled a

---

4. In *Richards,* Justice Stevens noted:

In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime ... This standard—as opposed to a probable cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries.
*Richards,* 520 U.S. at 394, 117 S.Ct. 1416.

task force to see if a search would turn up some evidence for the Harford County State's Attorney Office to proceed with prosecution.

If there was some reason to believe that Lee was either a "career criminal," a major dealer, or part of a drug distribution organization, or even that he could possibly assist in prosecuting larger and more important cases, it never came to the attention of the Harford County State's Attorney at the trial below, or to the attention of the District Court judge who issued the warrant. The task force leader had no particularized knowledge, beyond what he had learned from the Baltimore County officers who secured the warrant. As near as we can tell from the record, the Baltimore County officers who applied for the warrant themselves had minimal information about Lee, his home, or his manner of keeping drugs, the extent of his involvement in drug trafficking, or his involvement in any other criminal activity. The case was grounded on the observation of two drug sales, and then passed along to a neighboring jurisdiction to proceed with all of the resources it could assemble.

█ At the suppression hearing, the only witnesses to testify were two Maryland State Police troopers called by the State, one of whom testified primarily about having taken a statement from the appellant and not about the conduct of the search. The other trooper, who led the task force, candidly admitted that the only reason he had for not knocking and announcing was that this was a cocaine case, and he always battered down the doors in cases where the object to be seized was narcotics, such as cocaine, that could be easily "flush[ed] down the toilet." The trooper testified that the only exceptions would occur, hypothetically, if the quantity of drugs exceeded the occupant's ability to dispose of them, or the occupants were not at home. The State was unable to elicit from the task force leader any particularized evidence about Lee, Lee's home, or anything else that would qualify as exigent circumstances, as contemplated by *Wilson* and *Richards*. The State contends, to the contrary, that the task force

leader testified that "Lee was a known drug dealer who sold cocaine on the premises." Support for the existence of such testimony, however, does not exist anywhere in the record, and, accordingly, the State omits any citation to the record on this point in its brief. The State has stretched the bounds of permissible inference even to suggest this testimony was, in some way, implied. The record is bare of any evidence of exigent circumstances that could possibly eliminate the constitutional necessity to knock and announce. The circuit court erred in ruling that there was justification for the police entry without knocking and announcing. "Without that evidence there is not sufficient proof to sustain the conviction." *Glodowski,* 220 N.W. at 231.

The State insists in its brief, as well as in its motion for reconsideration, that the doctrine of inevitable discovery, an exception to the exclusionary rule, must apply to this case. The doctrine of inevitable discovery, explained by the U.S. Supreme Court in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), is not intended to place the State "in a better position than it would have been if no illegality had transpired," nor is it intended to place the State "in a *worse* position simply because of some earlier police error or misconduct." *Nix,* 467 U.S. at 443, 104 S.Ct. 2501. That exception applied to this case would forgive the police for their unconstitutional entry because, had the police properly knocked on Lee's door and announced their presence, the cocaine in Lee's dresser drawer would have inevitably been discovered and seized, despite the method of entry.

The State relies upon *People v. Vasquez,* 461 Mich. 235, 602 N.W.2d 376 (1999), to support this theory. It is the State's opinion that the Supreme Court of Michigan "aptly" observed that "knock and announce principles do not control the execution of a valid search warrant—they only delay entry for a brief period." *Vasquez,* 602 N.W.2d at 379. When applied to the facts of the instant case, this is simply incorrect. Knocking and announcing does not "only delay entry;" instead, *it entirely changes the method of the entry.* An entry commenced by breaking down a door with a concrete-filled pipe

will continue in a very different and subsequently more violent manner than that begun by knocking and announcing. Moreover, the consequences of such illegal entry touch all people inside a residence, regardless of their relationship to the person or item to be seized, such as the other adult resident or her three small children in the Lee home.

The opinion of the Michigan Supreme Court, apparently the only court in the nation to apply the doctrine of inevitable discovery to knock-and-announce violations, conflicts with decisions of the United States Supreme Court. In his dissenting opinion in *People v. Stevens*, 460 Mich. 626, 597 N.W.2d 53 (1999), Justice Cavanagh explained the precursor opinion to *Vasquez* that announced the application of this doctrine to knock-and-announce cases in Michigan, that the United States Supreme Court has applied the exclusionary rule to violations of the knock-and-announce requirement in *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958) and in *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968). Although these cases predated *Nix*, the dissent in *Stevens* correctly maintains that, "where *Nix* did not concern a knock and announce case (and could ... be arguable toward such a case only by way of analogy), it would seem more prudent for us to follow the law as it currently has been stated by the Court, and leave it to the advocates to argue for changes in recognition of subsequent decisions and 'newer' logic." *Stevens*, 597 N.W.2d at 69 (Cavanagh, J. dissenting).[5]

---

**5.** Noted Fourth Amendment commentator, Wayne R. LaFave, has called the *Stevens* decision the "Alice–in–Wonderland version of inevitable discovery," and soundly opined:

> The *Stevens* dissent is absolutely correct, and is in full accord with a contemporaneous federal decision [*United States v. Dice*, 200 F.3d 978, 986 (6th Cir.2000)] sharply rejecting a *Stevens*-type argument with the observation that "[t]o remove the exclusionary bar from this type of knock-and-announce violation whenever officers possess a valid warrant would in one swift move gut the constitution's regulation of *how* officers execute such warrants."

5 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.4 (3rd ed.1996, 2001 Supp.).

The analysis applied by the majority in *Stevens* and *Vasquez* is unsound. As explained in Robin L. Gentry, *Why Knock? The Door Will Inevitably Open: An Analysis of People v. Stevens and the Michigan Supreme Court's Departure From Fourth Amendment Protection,* 46 WAYNE L.REV. 1659 (2000):

> Courts have used a three-step analysis when applying the inevitable discovery exception, one step of which includes an analysis of whether the evidence would have been discovered by a truly independent means. *See United States v. Silvestri,* 787 F.2d 736 (1st Cir.1986). In a knock-and-announce case, this independent means is lacking. The legal warrant and the knock-and-announce violation are too closely related.

*Id.* at 1678. Said another way, "the warrant and the method of entry are intimately connected." *Id.* at 1679.

■ Even if the State were correct in asserting that the evidence would have, in fact, been inevitably discovered, a predictive outcome does not legalize the method of entry. The State's position ignores "the fundamental constitutional importance of what is at stake here." *United States v. Leon,* 468 U.S. 897, 929, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (Brennan, J. dissenting). As Justice Brennan explained in his dissenting opinion in *Leon:*

> While the machinery of law enforcement and indeed the nature of crime itself have changed dramatically since the Fourth Amendment became part of the Nation's fundamental law in 1791, what the Framers understood then remains true today-that the task of combating crime and convicting the guilty will in every era seem of such critical and pressing concern that we may be lured by the temptations of expediency into forsaking our commitment to protecting individual liberty and privacy. It was for that very reason that the Framers of the Bill of Rights insisted that law enforcement efforts be permanently and unambiguously restricted in order to preserve personal freedoms. In the constitutional scheme they ordained, the sometimes unpopular task of ensuring that the government's enforcement

efforts remain within the strict boundaries fixed by the Fourth Amendment was entrusted to the courts.

*Leon,* 468 U.S. at 929–930, 104 S.Ct. 3405 (Brennan, J. dissenting). To apply the inevitable discovery exception to the exclusionary rule in this instance would render the knock-and-announce provision of the Fourth Amendment meaningless. The application of inevitable discovery in such cases negates the rule against per se exceptions to the knock-and-announce requirement. The United States Supreme Court has twice unanimously affirmed the requirement to knock and announce. In light of two rulings from the nation's highest court, finding this requirement to exist in both our common law and the Constitution, it would be wrong and utterly inconsistent for Maryland, in effect, to expunge this requirement and establish such an exception as was created in Michigan, by attaching the doctrine of inevitable discovery to violations of the well established knock-and-announce requirement.

**JUDGMENT REVERSED.**

**COSTS TO BE PAID BY HARFORD COUNTY.**